[No. B238304. Second Dist., Div. Six. Jan. 22, 2013.]

DEBORAH GRAY, Plaintiff and Appellant, v.
JOHN CHIH CHIU et al., Defendants and Respondents.

COUNSEL

Eugene D. Locken for Plaintiff and Appellant.

Prindle, Amaro, Goetz, Hillyard, Barnes & Reinholtz, David M. Hillings and Jack R. Reinholtz for Defendant and Respondent California Minimally Invasive Surgical Center.

Peterson Bradford Burkwitz and George E. Peterson for Defendants and Respondents John C. Chiu, M.D., California Back Specialist Medical Group, and Thousand Oaks Spine Medical Group.

OPINION

PERREN, J.—The parties to a medical malpractice arbitration agree upon a neutral arbitrator. Subsequent to commencing arbitration proceedings but prior to the hearing, counsel for the defendant doctor affiliates with the firm providing the arbitrator. Neither counsel nor the arbitrator discloses that relationship. Here we conclude that the California Arbitration Act (the Act) (Code Civ. Proc., § 1280 et seq.),[1] and the California Rules of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitrations (Ethics Standards) require that the arbitrator disclose the relationship. The Act and the Ethics Standards (1) require a neutral arbitrator to disclose that a lawyer in the arbitration is a member of the administering "dispute resolution provider organization" (DRPO), and (2) section 1286.2, subdivision (a)(6) compels a trial court to vacate the arbitration award if the arbitrator fails to disclose that information.

---

[1] All statutory references are to the Code of Civil Procedure.

In her appeal from the judgment affirming a medical malpractice arbitration award in favor of respondents, appellant Deborah Gray contends that the trial court erred by denying her petition to vacate the award on the ground that the arbitrator violated the disclosure provisions of the Act and the Ethics Standards. We agree and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

For many years, William Ginsburg represented respondent John Chih Chiu, M.D. (Chiu). In January 2009, appellant and her husband, Tom Gray, filed a medical malpractice complaint against Chiu, California Back Specialist Medical Group, California Minimally Invasive Surgical Center, Inc., and Thousand Oaks Spine Medical Group (respondents). The complaint alleged that appellant was injured by respondents' negligent treatment during and following spinal disc surgery, and that Tom Gray suffered a loss of consortium.[2]

Attorney Eugene D. Locken represented appellant and Tom Gray. The Peterson & Bradford firm (Ginsburg, of counsel) represented respondent Chiu. Ginsburg was the lead trial attorney for the defense team. On July 20, 2009, the trial court granted respondents' motion to compel arbitration under the terms of the parties' "Physician-Patient Arbitration Agreement." The agreement provides for a three-member arbitration panel consisting of one arbitrator selected by the plaintiff, and one selected by the defense (party arbitrators), with a neutral arbitrator to be selected by the party arbitrators. Ginsburg helped select the defense party arbitrator.

In September 2009, Ginsburg announced that he would retire from Peterson & Bradford, and the practice of litigation, and become an arbitrator. He started an "arbitration/mediation business known as William H. Ginsburg Mediation Services." For a while, he continued working at Peterson & Bradford. An e-mail message from Ginsburg dated October 6, 2009, stated, "I'm doing [alternative dispute resolution] with ADR Services, Inc. . . . ." George E. Peterson, a partner at Peterson & Bradford, became lead trial counsel for the defense of this matter, and Chiu retained Ginsburg as his personal counsel.

In October 2009, the party arbitrators selected the Honorable Robert T. Altman (ret.) as the neutral arbitrator. In November 2009, ADR Services, Inc.

---

[2] Tom Gray is not a party to this appeal.

(ADR) notified the party arbitrators that Judge Altman could not serve. The party arbitrators then selected the Honorable Alan Haber (ret.) as the neutral arbitrator.

Judge Haber sent the parties a disclosure statement in January 2010 and a supplemental disclosure statement in April 2010. On each occasion, Judge Haber stated that he had no significant personal relationship or other professional relationship with any party, or lawyer for a party. Both disclosure statements listed the names of participants for whom a conflict check was performed, including several attorneys and firms. Ginsburg was not named on either disclosure statement.

The arbitration took place at the ADR Century City office, over nine working days from January 31, 2011, through February 10, 2011. Ginsburg attended all sessions of the arbitration, as personal counsel for Chiu, and used the defense team's private room to speak with Chiu and Peterson. Several weeks after the sessions concluded, Judge Haber issued a binding arbitration award for respondents. The award included findings that appellant failed to meet the burden of proving that respondents' care of her was "below the standard of care and practice," or that respondents caused her injuries.

Appellant filed a petition to vacate the arbitration award on multiple grounds, including the failure of Judge Haber to disclose that Ginsburg was an ADR member. The parties presented written and oral arguments, declarations, and documentary exhibits, but no live testimony.

Ginsburg submitted a declaration stating that he first began providing arbitration services through ADR in March 2010, and served on their panel as an independent contractor, without any formal contract. He had no financial interest in ADR. Ginsburg attended some of the expert depositions relating to this matter in 2010. He did not actively participate. During 2010, Ginsburg told Locken that he was performing arbitrations and mediations. He recalled giving Locken his ADR business card in 2010. The hallways and meeting areas of the ADR Century City office displayed posters with photographs and names of ADR panel members, including Ginsburg. ADR brochures throughout that office included Ginsburg's name and biographical information. Ginsburg saw Locken and the plaintiff party arbitrator reviewing the ADR brochures during the arbitration.

In responsive declarations, Locken and the plaintiff party arbitrator stated that prior to the arbitration, they had no knowledge that Ginsburg was a member of ADR. Locken recalled having received a business card from Ginsburg but denied that it showed any ADR affiliation. He declared that he "never received any information from any source before, or during the arbitrat[ion] hearing that . . . Ginsburg was a professional associate of ADR Services, Inc."

At the request of the trial court, Judge Haber also submitted a declaration. He stated that he retired from the superior court in 2004, and he was professionally acquainted with Ginsburg, who appeared in his courtroom once or twice. He had no social or other relationship with Ginsburg. After Judge Haber's retirement, he first encountered Ginsburg in the middle of 2010, and learned that Ginsburg "would be working through the ADR offices." Judge Haber occasionally saw Ginsburg at the Century City office of ADR, when they exchanged greetings, with little or no conversation. On one occasion before the arbitration, Ginsburg told Judge Haber that he would "participate with Doctor Chiu" in the arbitration. Judge Haber "made certain that [he did] not discuss any matters involving the Gray" case with Ginsburg.

During the proceedings below, the trial court stated that Ginsburg's ADR relationship "may not have been disclosed at the arbitration, but it wasn't hidden." The court also stated that "Ginsburg [was] off the case" and then he was "back in the case." On September 28, 2011, the court announced that it was denying appellant's petition to vacate the arbitration award, and cited several statutes and cases. The court did not cite Ethics Standard 8, or any other Ethics Standard. On October 31, 2011, the court entered judgment on the binding arbitration award and ordered that respondents were "entitled to have judgment entered in their favor and against [appellant]" and that she should "take nothing from [them]." The judge did not issue written findings or conclusions.

## DISCUSSION

Appellant contends that the Act and the Ethics Standards compelled the neutral arbitrator to disclose that a lawyer in the arbitration was a member of the administering dispute resolution agency. We agree.

### Standard of Review

"The . . . Act (§ 1280 et seq.) 'represents a comprehensive statutory scheme regulating private arbitration in' " California. (*Haworth v. Superior*

*Court* (2010) 50 Cal.4th 372, 380 [112 Cal.Rptr.3d 853, 235 P.3d 152].) It is established that the scope of judicial review of arbitration awards is extremely narrow in both the trial and appellate courts. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11, 33 [10 Cal.Rptr.2d 183, 832 P.2d 899].) Absent "a specific agreement by the parties to the contrary, a court may not review the merits of an arbitration award." (*Haworth*, at p. 380.) However, the Legislature has provided " 'for judicial review in circumstances involving serious problems with . . . the fairness of the arbitration process.' " (*Ibid.*; see §§ 1286.2 [grounds for vacation of award], 1286.6 [grounds for correction of award].) We apply the de novo standard of review to issues concerning arbitrator disclosure. (*Haworth*, at p. 388.)

### Governing Statutes and Ethics Standards

■ "The statutory scheme, in seeking to ensure that a neutral arbitrator serves as an impartial decision maker, requires the arbitrator to disclose to the parties any grounds for disqualification. Within 10 days of receiving notice of his or her nomination to serve as a neutral arbitrator, the proposed arbitrator is required, generally, to 'disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial.' (§ 1281.9, subd. (a).) Based upon these disclosures, the parties are afforded an opportunity to disqualify the proposed neutral arbitrator. (§ 1281.91, subds. (b) & (d).) If an arbitrator 'failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware,' the trial court must vacate the arbitration award. (§ 1286.2, subd. (a)(6)(A).)" (*Haworth v. Superior Court, supra*, 50 Cal.4th at 381, fn. omitted; see Ethics Standards, com. to std. 7.)

Pursuant to section 1281.85,[3] the Judicial Council adopted ethics standards and requirements for neutral arbitrators. Their express purpose is to establish

---

[3] Section 1281.85 provides in relevant part as follows: "(a) Beginning July 1, 2002, a person serving as a neutral arbitrator pursuant to an arbitration agreement shall comply with the ethics standards for arbitrators adopted by the Judicial Council pursuant to this section. The Judicial Council shall adopt ethical standards for all neutral arbitrators . . . . These standards shall be consistent with the standards established for arbitrators in the judicial arbitration program and may expand but may not limit the disclosure and disqualification requirements established by this chapter. The standards shall address the disclosure of interests, relationships, or affiliations that may constitute conflicts of interest, including prior service as an arbitrator or other dispute resolution neutral entity, disqualifications, acceptance of gifts, and establishment of future professional relationships. [¶] . . . [¶] (c) The ethics requirements and standards of this chapter are nonnegotiable and shall not be waived." (Subd. (c) added by Stats. 2009, ch. 133, § 1.)

the minimum standards of conduct for neutral arbitrators, to "guide the conduct of arbitrators, to inform and protect participants in arbitration, and to promote public confidence in the arbitration process." (Ethics Standards, std. 1(a).) The Ethics Standards obligate arbitrators to inform themselves of matters subject to mandatory disclosure. (Ethics Standards, std. 9(a).)

■ "The applicable statute and standards enumerate specific matters that must be disclosed. The arbitrator must disclose specified relationships between the arbitrator and the parties to the arbitration, including . . . any significant personal or professional relationship with a party or an attorney involved in the arbitration. (§ 1281.9, subd. (a)(3)–(6).) The arbitrator also must disclose '. . . matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council.' (§ 1281.9, subd. (a)(1), (2); see . . . Ethics [Standards, std. 7].) The Ethics Standards require the disclosure of 'specific interests, relationships, or affiliations' and other 'common matters that could cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial.' (Ethics Stds., com. to std. 7.)" (*Haworth v. Superior Court, supra,* 50 Cal.4th at p. 381.)

Ethics Standard 8 imposes additional specific disclosure obligations upon arbitrators in consumer arbitrations.[4] The parties agree that standard 8 applies to this matter. Ethics standard 8 provides in relevant part as follows: "[I]n a consumer arbitration . . . in which a [DRPO] is coordinating, administering, or providing the arbitration services, a person who is nominated or appointed as an arbitrator . . . must disclose . . . : [¶] (1) *Relationships between the [DRPO] and party or lawyer in the arbitration.* [¶] Any significant past, present, or currently expected financial or professional relationship or affiliation between the administering [DRPO] and a party or lawyer in the arbitration. Information that must be disclosed under this standard includes: [¶] (A) A party, a lawyer in the arbitration, or a law firm with which a lawyer in the arbitration is currently associated is a member of the [DRPO]." (Ethics Standards, std. 8(b)(1)(A).)

■ An arbitrator's duty of disclosure is a continuing one. (Ethics Standards, std. 7(f); *Ovitz v. Schulman* (2005) 133 Cal.App.4th 830, 840 [35

---

[4] A "consumer arbitration" is "an arbitration conducted under a predispute arbitration provision contained in a contract" where the "consumer party was required to accept the arbitration provision in the contract." (Ethics Standards, std. 2(d)(3).)

Cal.Rptr.3d 117].) "If [after making mandated written disclosures] an arbitrator . . . becomes aware of a matter that must be disclosed . . . , the arbitrator must disclose that matter to the parties in writing within 10 calendar days after the arbitrator becomes aware of the matter." (Ethics Standards, std. 7(c).) Disclosures required by standard 8 must be made "within the time and in the same manner as the disclosures required under standard 7(c)." (Ethics Standards, std. 8(b).)

### Ethics Standard 8 Compels a Neutral Arbitrator to Disclose That a Lawyer in the Arbitration Is a Member of the Administering DRPO

Respondents concede that Judge Haber failed to disclose that Ginsburg was a member of ADR, the administering DRPO. Nonetheless, they argue that Judge Haber had no duty to disclose that information, because there was no evidence of any "significant . . . financial or professional relationship or affiliation" between the neutral arbitrator and a lawyer in the arbitration. We disagree.

Respondents cite section 1281.9, subdivision (a)(1), in arguing that Judge Haber had no duty to disclose that Ginsburg was an ADR member because his membership could not "cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial." Even assuming that a person could not reasonably entertain such a doubt, based on Ginsburg's ADR membership, the inquiry does not end.[5]

In addition to compelling the disclosure of all facts that *could* cause a person to entertain such a doubt, section 1281.9 enumerates specific instances where disclosure is always compelled. Section 1281.9, subdivision (a)(2) requires disclosure of "[a]ny matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council pursuant to this chapter." That provision encompasses Ginsburg's membership in ADR, under Ethics Standard 8.

---

[5] A reasonable person could doubt the ability of Judge Haber to be impartial. (§ 1281.9, subd. (a)(1).) Judge Haber and Ginsburg belonged to ADR; Judge Haber learned of Ginsburg's ADR affiliation in midsummer 2010; they used the same Century City ADR office; and they saw each other several times at that office before the arbitration. Judge Haber learned before the arbitration that Ginsburg would "participate with Dr. Chiu" in the arbitration proceedings. He failed to disclose Ginsburg's affiliation with ADR to appellant or her counsel before or during the arbitration which began on January 31, 2011.

Ethics Standard 8(b)(1)(A) provides in relevant part as follows: "[A] person who is nominated or appointed as an arbitrator . . . must disclose the following . . . : [¶] (1) *Relationships between the [DRPO] and party or lawyer in arbitration* [¶] Any significant past, present, or currently expected financial or professional relationship or affiliation between the administering [DRPO] and a . . . lawyer in the arbitration. Information that must be disclosed under this standard includes: [¶] (A) A . . . lawyer in the arbitration . . . is a member of the [DRPO]."

Citing *Haworth v. Superior Court, supra,* 50 Cal.4th at pages 388–394 and *Guseinov v. Burns* (2006) 145 Cal.App.4th 944, 959 [51 Cal.Rptr.3d 903], respondents urge that Ethics Standard 8 does not compel an arbitrator to disclose that a lawyer in the arbitration is a member of the administering DRPO absent another significant financial or professional relationship. Those cases are inapposite. They do not address the specifically enumerated disclosure requirement at issue here (i.e. that "a lawyer in the arbitration . . . is a member of the [DRPO]"). (Ethics Standards, std. 8(b)(1).) Nor do they address whether Ethics Standard 8 compels such disclosure absent another significant relationship.

■ The plain language of Ethics Standard 8 compels the arbitrator to disclose that a lawyer in the arbitration is a member of the administering DRPO: *"Information that must be disclosed under this standard includes*: [¶] (A) A . . . *lawyer in the arbitration . . . is a member of the [DRPO]."* (Ethics Standards, std. 8(b)(1)(A), italics added.) Ethics Standard 8 mandates such disclosure without regard to the existence of another significant relationship between that lawyer and the DRPO.

■ Judge Haber failed to comply with his obligation to disclose Ginsburg's membership in ADR, the administering DRPO. The California Supreme Court has termed the requirement of a neutral arbitrator "essential to ensuring the integrity of the arbitration process." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 103 [99 Cal.Rptr.2d 745, 6 P.3d 669].) The " '[Statutory] [d]uties of disclosure and disqualification are designed to ensure an arbitrator's impartiality.' [Citation.]" (*Azteca Construction, Inc. v. ADR Consulting, Inc.* (2004) 121 Cal.App.4th 1156, 1168 [18 Cal.Rptr.3d 142].)

### *Estoppel/Waiver*

Respondents argue that appellant should be estopped from seeking vacatur based on Judge Haber's failure to disclose Ginsburg's ADR membership, or

that she waived the right to do so, because the "allegedly disqualifying information was disclosed," or because appellant knew or should have known of Ginsburg's ADR membership. We disagree.

Respondents' estoppel claim assumes that someone other than the neutral arbitrator can effectively disclose the membership of a participating lawyer in the administering DRPO. Ethics Standard 8 requires that the neutral arbitrator disclose such membership, with one exception that does not apply here. That exception states that "[a]n arbitrator may rely on information supplied by the administering [DRPO]" in making disclosures concerning the affiliation of a party's lawyer with the DRPO. (Ethics Standards, std. 8(a).) Judge Haber did not rely on that exception. Nor could he have done so. The record lacks evidence that ADR, the DRPO, made the required disclosure.

■ We reject respondents' related claim that appellant waived the right to seek vacatur based on Judge Haber's failure to disclose Ginsburg's ADR membership because she knew or should have known of his ADR membership. Respondents stress that "evidence [of Ginsburg's ADR membership] stared [appellant's counsel, Locken] in [the] face on a daily basis" during the January—February 2011 arbitration. Section 1281.85, subdivision (c) prohibits waiver of the ethics standards: "The ethics requirements and standards of this chapter are nonnegotiable and shall not be waived." (*Ibid.*) Further, the Ethics Standards require an arbitrator to make timely disclosure, i.e., "within 10 calendar days after the arbitrator becomes aware of the matter." (Ethics Standards, std. 7(c); see *id.*, std. 8(b)(1).) Judge Haber learned of Ginsburg's ADR membership in midsummer, 2010. The "evidence" of Ginsburg's ADR membership cited by respondents surfaced long after the 10-day disclosure period.

### The Trial Court Erred by Denying the Petition to Vacate the Arbitration Award

■ Section 1286.2, subdivision (a) provides that "the court shall vacate the award if the court determines [that] [¶] . . . [¶] (6) An arbitrator making the award . . . failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware . . . ." While that rule seems harsh, it is necessary to preserve the integrity of the arbitration process. The trial court erred by failing to vacate the arbitration award based upon Judge Haber's failure to disclose Ginsburg's ADR membership. (§ 1286.2, subd. (a)(6); *Ovitz v. Schulman, supra*, 133 Cal.App.4th 830, 833–834, 844–845.)

## DISPOSITION

The judgment confirming the award is reversed. The trial court is directed to vacate the arbitration award and proceed pursuant to section 1287. Costs are awarded to appellants.

Yegan, Acting P. J., and Hoffstadt, J.,[*] concurred.

Respondents' petition for review by the Supreme Court was denied April 10, 2013, S208928.

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.