Filed 9/12/14  Lawyers' Mutual Ins. Co. v. Law Offices of Diana Courteau CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| LAWYERS' MUTUAL INSURANCE COMPANY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> LAW OFFICES OF DIANA COURTEAU et al., <br><br> Defendants and Appellants. | B250158 <br><br> (Los Angeles County <br> Super. Ct. No. BS133945) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michelle R. Rosenblatt, Judge.  Affirmed.

Courteau & Associates and Diana L. Courteau for Defendants and Appellants.

Musick, Peeler & Garrett, Wayne B. Littlefield, Lynn A. O'Leary and Cheryl A. Orr for Plaintiff and Respondent.

## I. INTRODUCTION

Defendants, Law Offices of Diana Courteau doing business as Courteau & Associates, and Diana L. Courteau, appeal from a June 18, 2013 judgment. The judgment was entered after the trial court granted the petition to confirm an arbitration award filed by plaintiff, Lawyers' Mutual Insurance Company. The trial court also denied defendants' petition to vacate the award. Defendants argue the arbitration award should be vacated pursuant to Code of Civil Procedure[1] sections 1281.9, subdivision (a) and 1286.2, subdivision (a)(6). Defendants assert the neutral arbitrator failed to disclose a relationship with plaintiff's retired general counsel. They were members of 13 specialty panels of Alternative Resolution Centers, the alternative dispute resolution provider. Defendants also contend the arbitration award should be vacated pursuant to section 1286.2, subdivision (a)(5). Defendants argue their rights were substantially prejudiced by the refusal to continue the arbitration hearing. We affirm the judgment.

## II. BACKGROUND

### A. Dispute Between The Parties

The following recitation of background matters are drawn from the petition and arbitration award. On June 1, 2010, plaintiff issued a professional liability insurance policy to defendants for the period June 3, 2010, to June 3, 2011. The policy's limits of liability were $250,000 for each claim and $750,000 in the aggregate, inclusive of claim expenses after exhaustion of a $50,000 aggregate claim expense allowance. On July 26, 2010, defendants notified plaintiff in writing of a potential legal malpractice lawsuit by a former client, AAA Flag & Banner Manufacturing Company, Inc. (AAA Flag). On July 30, 2010, plaintiff's claims examiner, Birgit Sale, discussed the claim with Ms. Courteau.

---

[1] Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

Ms. Sale sent a letter to Ms. Courteau stating the insurer had opened a claim file and noting the policy limit was $250,000 per claim. On December 6, 2010, defendants submitted an application to plaintiff seeking to increase the policy limits to $1 million per claim and $3 million in the aggregate. On December 15, 2010, plaintiff issued amended policy declarations with the increased policy limits. The amendment effective date was December 15, 2010.

On February 11, 2011, after the policy with the increased policy limits was issued, Ms. Courteau informed plaintiff that AAA Flag had filed a malpractice lawsuit. On July 29, 2011, Ms. Courteau sent plaintiff the complaint filed on January 28, 2011, in *AAA Flag & Banner Mfg. Co., Inc. v. Courteau,* Los Angeles County Superior Court case No. BC454049. In a March 3, 2011 letter to defendants, plaintiff agreed to provide a defense, without reservation of rights, subject to a policy limit of $250,000 for the legal malpractice claim. In an April 5, 2011 letter to plaintiff, defendants asserted the $1 million policy limit should apply to the malpractice claim. Defendants contended the policy limits had been increased prior to the filing of the malpractice lawsuit. The foregoing statement of facts is necessarily incomplete because defendants failed to provide all of the exhibits attached to the petitions to compel arbitration and vacate the award.

## B. Nomination Of Arbitrators

On May 20, 2011, defendants demanded arbitration of the coverage issue. The demand was made pursuant to the arbitration clause in the professional liability insurance policy. The arbitration agreement provides for three arbitrators. Each party would name a party arbitrator in writing within 10 days. The party arbitrators in turn would select the third neutral arbitrator. On June 2, 2011, plaintiff designated Andrew Waxler as its party arbitrator. On July 13, 2011, defendants selected Cynthia Bozzone as their party arbitrator. The party arbitrators could not agree on the selection of the neutral arbitrator.

3

On September 29, 2011, plaintiff filed a petition to have the trial court nominate the neutral arbitrator pursuant to section 1281.6. On December 8, 2011, plaintiff's petition was granted. The parties were ordered to submit a list of up to five candidates, along with a description of their prior and existing relationship with each proposed arbitrator. Then at a hearing, the trial court would designate five nominees to serve as the third arbitrator from the lists submitted by the parties. If the parties could not agree on the third arbitrator, the trial court would hold another hearing to select one of the five nominees as the neutral arbitrator.

Defendants submitted a list of five proposed arbitrators to the trial court. Defendants proposed Retired Court of Appeal Associate Justice Daniel A. Curry as the first of five candidates. Plaintiff proposed five other candidates but did not propose Retired Justice Curry. Defendants objected to all of plaintiff's candidates including Retired Court of Appeal Justice John Zebrowski and Superior Court Judge Robert W. Thomas. Defendants objected even though they also had proposed Retired Justice Zebrowski and Judge Thomas. The trial court nominated four of the five candidates proposed by defendants, including Retired Justice Curry. Defendants objected to four of the five proposed arbitrators. They stated they did not have a "firm objection" to Retired Justice Curry. At a January 20, 2012 hearing, the trial court designated Retired Justice Curry as the neutral arbitrator.

C. Arbitration

On January 11, 2013, defendants filed a motion seeking to rescind the appointment of the arbitrators and to stay the arbitration. Defendants challenged the arbitration panel's decision to: curtail written discovery; limit defendants to one deposition; and preclude defendants from calling any witnesses at the January 25, 2013 arbitration hearing.

On January 25, 2013, the arbitration hearing proceeded before Retired Justice Curry and plaintiff's party arbitrator, Mr. Waxler, which was permitted under the

4

arbitration agreement.  Defendants and their party arbitrator, Ms. Bozzone, did not attend the arbitration hearing.  Defendants also did not submit an arbitration brief.

On February 4, 2013, after the arbitration hearing was concluded, Ms. Bozzone, defendants' arbitrator, sent the following e-mail to Retired Justice Curry:  "I unequivocally informed the [Alternative Resolution Centers] 'confirmation' secretary that I would be unable to appear, regardless of Ms. Courteau's pending motion, because my mother was in ICU (in fact, I was standing in the ICU when I took her call that morning) - it's a pity that she apparently failed to communicate anything to anyone.  However, I believe it was reasonable of me to presume that such information would have been passed on to you, and that my communication with the [Alternative Resolution Centers'] secretary reaffirmed my earlier [e-mail] to you advising that she was in the hospital."  Retired Justice Curry responded on February 4, 2013, to Ms. Bozzone's e-mail:  "I will not agree that we were informed before the Arbitration hearing that [M]s. Bozzone was not appearing because she was unable to appear.  [¶]  She and [M]s. Courteau decl[i]ned to appear.  Neither requested a continuance.  [¶]  Ms. Courteau did not file an Arbitration brief.  They practice law out of the same office."

On February 19, 2013, the arbitration panel issued its findings and award.  The arbitration award found in favor of plaintiff, "The Arbitration Panel finds that [plaintiff's] coverage obligation under the Policy with respect to the Malpractice Lawsuit is limited to $250,000, inclusive of Claim Expenses after exhaustion of the $50,000 aggregate Claim Expense Allowance."  Plaintiff was awarded arbitration costs of $13,410.

Ms. Bozzone, who did not attend the arbitration hearing, dissented from the award.  Ms. Bozzone's dissent states in part:  "I dissent from both the hearing going forward without my participation and that of Ms. Courteau, and from the outcome set forth in the proposed Final Award.  [¶]  The panel was made aware prior to the January 25 hearing that I would not be in attendance at the hearing because there was pending before the Superior Court a motion brought by Courteau concerning the scope of the arbitration hearing and requesting a stay.  Further, on or about the morning of January 23 I made [Alternative Resolution Centers] aware (through its confirmation secretary) that I could

5

not attend the January 25 arbitration hearing for the additional reason that my elderly mother was in ICU. The panel received copies of Courteau's aforementioned motion well before the January 25 hearing."

## D. Parties' Petitions

On April 2, 2013, plaintiff filed a petition to confirm the arbitration award. On April 24, 2013, defendants filed their petition to vacate the arbitration award and opposition to plaintiff's petition to confirm. Defendants argued the arbitration award must be vacated under sections 1286.2, subdivision (a) and 1281.9, subdivision (a). The basis of defendants' position was that Retired Justice Curry failed to disclose a relationship with Jerold S. Sherman. Both Retired Justice Curry and Mr. Sherman are arbitrators affiliated with Alternative Resolution Centers and are listed together on 13 specialty panels. Mr. Sherman was plaintiff's senior vice-president and general counsel for 12 years before retiring in 2005. In addition, plaintiff's attorney, Wayne B. Littlefield, endorsed Mr. Sherman on a Web site profile maintained by Alternative Resolution Centers. Ms. Courteau states in her declaration: "I would never have accepted that the arbitration have taken place with Curry, at [Alternative Resolution Centers], where [plaintiff's] past Senior Vice President/General Counsel, Jerold Sherman, was present, working for [Alternative Resolution Centers], and interacting with other members at [Alternative Resolution Centers]. I absolutely believe Curry should have disclosed to Courteau, Curry's professional/personal relationship with Sherman. Curry and [Alternative Resolution Centers] must have known that disclosing Sherman would have caused Courteau to have *reasonable* doubts as to the impartiality of Curry, especially where Curry shared 13 Specialty Panels with Sherman."

Defendants also contended the arbitration award should be vacated under section 1286.2, subdivision (a)(5). Defendants argued their rights were substantially prejudiced by Retired Justice Curry's refusal to postpone the arbitration hearing. Defendants asserted three days before the January 25 hearing, Ms. Bozzone informed Retired Justice

6

Curry and Mr. Waxler that her mother was in a hospital in the intensive care unit. Ms. Bozzone's declaration states: "My 88-year-old mother was a patient in the ICU of Little Company of Mary Hospital between January 20 and January 25, 2013. I apprised my co-arbitrators of this fact by [e-mail] on January 22, 2013. On or about January 23, 2013, while I was present in the ICU, I was called by an [Alternative Resolution Centers] receptionist to confirm my attendance at the January 25, 2013 arbitration. I specifically told the [Alternative Resolution Centers] individual who called me from [Alternative Resolution Centers] that my mother was in the hospital's ICU and that I would be unable to attend the January 25 arbitration. Because I am an only child and my mother's only living relative, it was imperative that I be present and available at the hospital during this period."

On May 14, 2013, plaintiff filed an opposition to defendants' petition to vacate and reply brief in support of its petition to confirm the arbitration award. Plaintiff argued Retired Justice Curry made all appropriate disclosures and there was no basis for defendants' suggestion he was biased against them. In addition, plaintiff argued defendants and Ms. Bozzone never requested a continuance of the arbitration hearing. Ms. Bozzone's January 22, 2013 e-mail to Retired Justice Curry and Mr. Waxler states: "Ms. Courteau has a motion pending before the Superior Court, a copy of which you should both have received. I believe it would [be] entirely inappropriate to proceed with the arbitration hearing in Ms. Courteau's absence; moreover, as a party arbitrator retained by Ms. Courteau, it would be inappropriate for me to appear at the January 25 hearing. I do not believe Ms. Courteau intends to appear on January 25 due to the pending motion. However, you may wish to confirm this. [¶] I should have communicated this position by this weekend, and I am sorry for the delay, but my mother has been in ICU at Little Company of Mary since Saturday Night and my mind has been elsewhere."

As part of the opposition to the petition to vacate, plaintiff submitted the January 20, 2012 disclosure letter from Alternative Resolution Centers on behalf of Retired Justice Curry. The disclosure letter disclosed one prior matter each with plaintiff and defendants. Additionally, the disclosure letter states: "[Alternative Resolution Centers]

7

is additionally requesting the judge to search his/her records to ascertain whether the attorneys or parties have compensated the judge directly during the past sixty months in any matter heard outside this office or in an independent forum. [Alternative Resolution Centers] is further asking said judge to forward any supplemental disclosures to your offices. [¶] To further comply with [Code of Civil Procedure] section 1281.85 as adopted by the Judicial Council of California and effective as of July 1, 2002 [Alternative Resolution Centers] makes the following disclosure: If selected as a neutral arbitrator [,] the Arbitrator selected in the instance matter will entertain and accept offers of permitted employment or new professional relationships from parties, attorneys, or law firms involved in a case while this case is pending. [¶] [Alternative Resolution Centers] will endeavor to inquire of all neutrals if there are relationships with any of the attorneys, parties or carriers, etc. that would impair their ability to decide the matter in a completely fair and impartial way. [Alternative Resolution Centers] is additionally requesting all attorneys to the instant action advise this office if there are any disclosures they feel might affect the impartiality of the neutral."

Plaintiff also submitted the declaration of Retired Justice Curry in opposition to defendants' petition to vacate the arbitration award. Retired Justice Curry states: "I have never met and do not know Jerold Sherman, Esq. Prior to Ms. Courteau mentioning Mr. Sherman's name, I was unaware Mr. Sherman was affiliated with [Alternative Resolution Centers] or that Mr. Sherman had served as the general counsel of [plaintiff]. Such information would not have been [] relevant to my role as the third neutral arbitrator in the coverage arbitration between [plaintiff] and Ms. Courteau, and would not have impacted my impartiality. [¶] I have no interest in and derive no financial benefit from any matter handled by Mr. Sherman, and Mr. Sherman has no interest in and derives no financial benefit from any matter handled by me. I have no ownership or financial interest in [Alternative Resolution Centers]. [¶] Per [Alternative Resolution Centers'] regular practice, the disclosures made at the inception of the arbitration stated that I would entertain and accept offers of continued employment from the parties or their counsel. While the arbitration was pending, I was retained as mediator in one matter in

8

which Ms. Courteau was counsel and two matters in which Musick, Peeler & Garrett was counsel. [¶] Neither Ms. Courteau nor her appointed party arbitrator, Cynthia Bozzone, requested a postponement of the Arbitration scheduled for January 25, 2013 due to Ms. Bozzone's mother's illness. Ms. Bozzone mentioned that her mother had been in the hospital only after she and Ms. Courteau had indicated that they did not plan to attend the Arbitration."

## E.  Trial Court Ruling

On May 24, 2013, the trial court granted plaintiff's petition to confirm and denied defendants' petition to vacate the arbitration award. The trial court adopted its lengthy tentative ruling as the final order after oral argument. The trial court rejected defendants' argument that the arbitration award should be vacated because Retired Justice Curry failed to disclose an alleged significant personal and professional relationship with Mr. Sherman. The trial court found defendants presented no evidence that Retired Justice Curry had a personal relationship with Mr. Sherman. The trial court ruled Retired Justice Curry was not required to disclose that Alternative Resolution Centers employed someone who was previously an employee of plaintiff. The trial court ruled: "[T]he facts are that Sherman and [Retired Justice Curry] work at [Alternative Resolution Centers] and are on some of the same specialty panels. There is no evidence that [Retired Justice Curry] had any type of a relationship with Sherman either when Sherman worked for [plaintiff] or since he has been at [Alternative Resolution Centers]. There is no evidence that [Retired Justice Curry] knew Sherman. There is no evidence that even if he knew Sherman in a professional capacity that he would know he was formerly with [plaintiff] or that he had a relationship of some sort with Littlefield, an attorney at Musick, Peeler (*but not the attorney at the Arbitration.*)"

In addition, the trial court denied defendants' petition to vacate the arbitration award under section 1286.2, subdivision (a)(5). The trial court found defendants and their party arbitrator never requested a continuance of the arbitration hearing. The trial

9

court stated: "A later claim that the failure to attend is due to Bozzone's family emergency is disingenuous. The Court does not question the fact that Bozzone had a family emergency for which a reasonable continuance could have been granted had that request been made. However, there was no reason for the neutral to postpone the arbitration without a request from Bozzone following the January 22 [e-mail] in which Bozzone stated that she would not be attending due to Courteau not attending. Despite a discrepancy in the evidence whether Bozzone spoke to a secretary the day before the arbitration, there is no evidence whatsoever that Bozzone or Courteau requested from [Retired Justice Curry] a continuance of the arbitration. Given that the arbitration provision of the policy signed by the parties reflects that a decision and award could be rendered by two of the three arbitrators, the decision of Courteau's party arbitrator not to [formally] request a postponement and the decision of Courteau herself not to attend the arbitration and not to request a postponement was risky. Nevertheless it was the risk that Courteau took. The Court finds that this is not a situation in which the party arbitrator sought a postponement of the arbitration due to her family emergency, which would have warranted a postponement. Instead, it was a decision akin to a boycott of the proceedings."

III. DISCUSSION

A. Arbitrator's Disclosure Obligations

Section 1286.2, subdivision (a)(6) states: "Subject to Section 1286.4, the court shall vacate the award if the court determines any of the following: . . . [¶] (6) An arbitrator making the award either: (A) failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware; or (B) was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision. . . ." Section 1281.9, subdivision (a) provides, "In any arbitration pursuant to an arbitration agreement, when a person is to serve as a neutral arbitrator, the proposed

10

neutral arbitrator shall disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial . . . ."

In *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 381 (*Haworth*), our Supreme Court explained:  "The applicable statute and standards enumerate specific matters that must be disclosed.  The arbitrator must disclose specified relationships between the arbitrator and the parties to the arbitration, including involvement in prior arbitrations, an attorney-client relationship with any [party or] attorney involved in the arbitration, and any significant personal or professional relationship with a party or an attorney involved in the arbitration.  (§ 1281.9, subd. (a)(3)-(6).)  The arbitrator also must disclose 'any ground specified in Section 170.1 for disqualification of a judge,' as well as 'matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council.'  (§ 1281.9, subd. (a)(1)-(2); see Cal. Rules of Court, Ethics Stds. for Neutral Arbitrators in Contractual Arbitration (Ethics Standards).)  The Ethics Standards require the disclosure of 'specific interests, relationships, or affiliations' and other 'common matters that could cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial.'  (Ethics Stds., com. to std. 7.)  Specific matters that must be discloses include, for example,  the arbitrator's financial interest in a party or the subject of the arbitration, the arbitrator's knowledge of disputed facts relevant to the arbitration, and the arbitrator's 'membership in any organization that practices invidious discrimination on the basis of race, sex, religion, national origin, or sexual orientation.'  (Ethics Stds., std. 7(d)(13); see *id.*, std. 7(d)(9), (10), (12).)"  (Accord, *Nemecek & Cole v. Horn* (2012) 208 Cal.App.4th 641, 646 (*Nemecek*).)

The disclosure requirements are intended only to ensure the arbitrator's impartiality.  (*Haworth, supra*, 50 Cal.4th at p. 393; *Nemecek, supra,* 208 Cal.App.4th at p. 646.)  Our Supreme Court stated, "They are not intended to mandate disclosure of all matters a party might wish to consider in deciding whether to oppose or accept the selection of an arbitrator."  (*Haworth, supra*, 50 Cal.4th at p. 393; *Nemecek, supra,* 208 Cal.App.4th at p. 646.)  An arbitrator's alleged failure to disclose is a mixed question of

11

law and fact that is subject to de novo review. (*Haworth, supra*, 50 Cal.4th at pp. 384-386; *Mt. Holyoke Homes, L.P. v. Jeffer Mangels Butler & Mitchell, LLP* (2013) 219 Cal.App.4th 1299, 1312.)

Defendants contend the trial court erred by not vacating the arbitration award under section 1286.2, subdivision (a)(6). Defendants argue: under section 1281.9, subdivision (a), Alternative Resolution Centers should have disclosed that it employed Mr. Sherman, plaintiff's retired senior vice-president and general counsel; Mr. Sherman shared 13 specialty panels with Retired Justice Curry; Mr. Littlefield, plaintiff's coverage counsel, knew Mr. Sherman; this occurred when Mr. Sherman was the plaintiff's general counsel; Mr. Littlefield is directly involved in the arbitration proceedings; and Mr. Littlefield endorsed Mr. Sherman in Alternative Resolution Centers' promotional materials.

Relying on *Gray v. Chui* (2013) 212 Cal.App.4th 1355, 1362-1363 (*Gray*), defendants argue Alternative Resolution Centers and Retired Justice Curry were required to disclose their relationship with Mr. Sherman. In addition, defendants argue, Alternative Resolution Centers and Retired Justice Curry should have disclosed Mr. Sherman's relationship with Mr. Littlefield. Before explaining why defendants' arguments are without merit, we set forth the facts in *Gray* in some detail.

In *Gray*, the late William Ginsburg, counsel for a doctor, affiliated with a dispute resolution provider organization, ADR Services, Inc. Mr. Ginsburg continued to represent the doctor throughout all of the arbitration proceedings conducted before ADR Services, Inc. Mr. Ginsburg affiliated with ADR Services, Inc. after arbitration proceedings commenced against the doctor but before the arbitration hearing. (*Gray, supra,* 212 Cal.App.4th at pp. 1360-1361.) Mr. Ginsburg began providing arbitration services through ADR Services, Inc. in March 2010 but, as noted, continued to serve as counsel for the doctor in the arbitration matter. (*Id.*, at pp. 1359-1360.) The neutral arbitrator, Retired Judge Alan Haber, was affiliated with ADR Services, Inc., which provided arbitration services to the parties. (*Ibid.*) In January and April 2010, Retired Judge Haber sent the parties disclosure statements indicating he had no significant

12

personal or professional relationship with any of the parties or litigants. (*Id.* at p. 1360.) In February 2011, Retired Judge Haber issued a binding arbitration award for defendants. (*Ibid.*) Plaintiff filed a petition to vacate the arbitration award based on Retired Judge Haber's failure to disclose that Mr. Ginsburg was an employee of ADR Services, Inc. (*Ibid.*)

Retired Judge Haber submitted a declaration which denied the existence of any social relationship with Mr. Ginsburg. (*Gray, supra,* 212 Cal.App.4th at p. 1361.) Retired Judge Haber learned Mr. Ginsburg would be working with ADR Services, Inc. in the middle of 2010. (*Ibid.*) At one point in the opinion, the Court of Appeal described the interactions between Retired Judge Haber and Mr. Ginsburg: "Judge Haber occasionally saw Ginsburg at the Century City office of ADR, when they exchanged greetings, with little or no conversation. On one occasion before the arbitration, Ginsburg told Judge Haber that he would 'participate with Doctor Chiu' in the arbitration. Judge Haber 'made certain that [he did] not discuss any matters involving the Gray' case with Ginsburg." (*Id.* at p. 1361.)

The Court of Appeal held the arbitration award should have been vacated based on Retired Judge Haber's failure to disclose Mr. Ginsburg's ADR, Services, Inc. membership. (*Gray, supra,* 212 Cal.App.4th at pp. 1365-1366.) The Court of Appeal held Retired Judge Haber did not comply with Standard 8 of the Ethics Standards for Neutral Arbitrators in Contractual Arbitration (Ethics Standard). The Court of Appeal held under Ethics Standard 8, Retired Judge Haber was required to disclose that Mr. Ginsburg, a lawyer representing a party in the arbitration, was a member of ADR Services, Inc. (*Id.* at p. 1364.)

*Gray* is distinguishable from the present case. In *Gray*, the Court of Appeal held Retired Judge Haber failed to comply with Ethics Standard 8. Ethics Standard 8, subdivision (b)(1)(A) provides in relevant part: "'[I]n a consumer arbitration . . . in which a [dispute resolution provider organization] is coordinating, administering, or providing the arbitration services, a person who is nominated or appointed as an arbitrator . . . must disclose . . . : [¶] (1) *Relationships between the* [*dispute resolution*

13

*provider organization*] *and party or lawyer in the arbitration* [¶] Any significant past, present, or currently expected financial or professional relationship or affiliation between the administering [dispute resolution provider organization] and a party or lawyer in the arbitration. Information that must be disclosed under this standard includes: [¶] (A) A party, a lawyer in the arbitration, or a law firm in which a lawyer in the arbitration is currently associated is a member of the [dispute resolution provider organization]." (*Gray, supra,* 212 Cal.App.4th at p. 1363.)

Nothing in section 1281.9, subdivision (a) or the Ethics Standards required Retired Justice Curry in 2012 and 2013 to disclose that Mr. Sherman is an arbitrator affiliated with Alternative Resolution Centers. Mr. Sherman stopped working for plaintiff in 2005. Mr. Sherman is not a party or lawyer involved in the arbitration. Mr. Sherman is endorsed by plaintiff's coverage counsel, Mr. Littlefield. However, there is no evidence Mr. Sherman, who had not worked for plaintiff since 2005, had any involvement in the arbitration proceedings. It is undisputed Retired Justice Curry, the neutral arbitrator, never knew or had even met Mr. Sherman. Retired Justice Curry was unaware Mr. Sherman was affiliated with Alternative Resolution Centers. Retired Justice Curry had no knowledge Mr. Sherman had served as plaintiff's general counsel. This issue was first brought to Retired Justice Curry's attention during the enforcement proceedings in the trial court. Retired Justice Curry had no ownership or financial interest in Alternative Resolution Centers and derived no financial benefit from any matter handled by Mr. Sherman.

Defendants argue the failure to disclose the relationship with Mr. Sherman could cause a person aware of the facts to reasonably entertain a doubt that Retired Justice Curry would be impartial. Determination as to a neutral arbitrator's impartiality is based on an objective reasonable person standard. Our Supreme Court explained: "[T]he appearance-of-partiality 'standard "must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice."' [Citations.] 'The "reasonable person" is not someone who is "hypersensitive or unduly suspicious," but rather is a "well-informed,

14

thoughtful observer."' [Citations.] '[T]he partisan litigant emotionally involved in the controversy underlying the lawsuit is not the *disinterested objective observer* whose doubts concerning the judge's impartiality provide the governing standard.' [Citations.] [¶] 'An impression of possible bias in the arbitration context means that one could reasonably form a belief that an arbitrator was biased *for or against a party for a particular reason.*" [Citation.]'" (*Haworth, supra*, 50 Cal.4th at p. 389; see *Wechsler v. Superior Court* (2014) 224 Cal.App.4th 384, 389.) Here, an objective observer would not find Retired Justice Curry was biased for or against a party for a particular reason. Retired Justice Curry had no personal or professional relationship with Mr. Sherman who was not involved in the arbitration. Retired Justice Curry and Mr. Sherman had never met or communicated in any way. And Mr. Sherman stopped working for plaintiff over one-half a decade before the dispute between the parties developed. This is an entirely different situation than was present in *Gray*. Neither Retired Justice Curry nor Alternative Resolution Centers was required to disclose that Mr. Sherman is a member of that dispute resolution provider organization. (See *Haworth, supra*, 50 Cal.4th at p. 391; *Mt. Holyoke Homes, L.P. v. Jeff Mangels Butler & Mitchell, LLP, supra,* 219 Cal.App.4th at p. 1311.)


B.  Postponement Of Arbitration Hearing


Section 1286.2, subdivision (a)(5) states: "Subject to Section 1286.4, the court shall vacate the award if the court determines any of the following: . . . [¶] (5) The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title." Section 1286.2, subdivision (a)(5) is a safety valve that permits a court to intercede when an arbitrator has prevented a party from fairly presenting its case. (*SWAB Financial, LLC v. E*Trade Securities, LLC* (2007) 150 Cal.App.4th 1181, 1196 (*SWAB Financial, LLC*); *Hall v. Superior Court*

15

(1993) 18 Cal.App.4th 427, 439.)  Here defendants must prove the arbitrators abused their discretion in refusing to continue the arbitration and that prejudice resulted.  (*SWAB Financial, LLC, supra,* 150 Cal.App.4th at p. 1198.)  We review the trial court's order de novo where the facts are undisputed.  (S*WAB Financial, LLC, supra,* 150 Cal.App.4th at p. 1196; *Malek v. Blue Cross of California* (2004) 121 Cal.App.4th 44, 55.)  To the extent the trial court's ruling rests upon a determination of disputed facts, we apply the substantial evidence test.  (S*WAB Financial, LLC, supra,* 150 Cal.App.4th at p. 1196; *Malek v. Blue Cross of California, supra,* 121 Cal.App.4th 44 at pp. 55-56.)

Defendants argue the trial court erred by not vacating the arbitration award under section 1286.2, subdivision (a)(5).  Defendants contend:  their rights were substantially prejudiced by Retired Justice Curry's refusal to postpone the arbitration hearing; the trial court erred in finding the arbitration hearing could only be postponed by written request; they did not have to request for a continuance in writing because Retired Justice Curry had decreed that the arbitration would be informal; and the trial court erred by not finding there was sufficient cause for postponing the arbitration hearing.

The trial court did not err by denying defendants' petition to vacate the arbitration award under section 1286.2, subdivision (a)(5).  Defendants and Ms. Bozzone did not request a postponement of the arbitration hearing.  As noted, Ms. Bozzone's January 22, 2013 e-mail to Retired Justice Curry and Mr. Waxler states:  "Ms. Courteau has a motion pending before the Superior Court, a copy of which you should both have received.  I believe it would [be] entirely inappropriate to proceed with the arbitration hearing in Ms. Courteau's absence; moreover, as a party arbitrator retained by Ms. Courteau, it would be inappropriate for me to appear at the January 25 hearing.  I do not believe Ms. Courteau intends to appear on January 25 due to the pending motion.  However, you may wish to confirm this.  [¶]  I should have communicated this position by this weekend, and I am sorry for the delay, but my mother has been in ICU at Little Company of Mary since Saturday Night and my mind has been elsewhere."  Ms. Bozzone's January 22, 2013 e-mail indicates defendants and she did not intend to attend the arbitration hearing.  However, as previously explained, Retired Justice Curry stated:  "Neither

16

Ms. Courteau nor her appointed party arbitrator, Cynthia Bozzone, requested a postponement of the Arbitration scheduled for January 25, 2013 due to Ms. Bozzone's mother's illness. Ms. Bozzone mentioned that her mother was in the hospital only after she and Ms. Courteau had indicated they did not plan to attend the Arbitration."

No doubt, Ms. Bozzone had good cause for postponement of the hearing. Ms. Bozzone's mother was hospitalized. But neither defendants nor Ms. Bozzone requested a continuance of the hearing from Retired Justice Curry. There is no merit to defendants' argument the trial court erred in requiring that their continuance request be in writing. There is no evidence defendants made any oral or written request. There is no evidence defendants ever contacted the arbitrators and requested the arbitration hearing be postponed. It is impossible for an arbitrator to abuse discretion when she or he is not asked to make the challenged decision. Moreover, defendants did not appear at the arbitration hearing to request a postponement. Retired Justice Curry did not abuse his discretion by going forward with the arbitration hearing because defendants and Ms. Bozzone never requested a postponement. The trial court properluy ruled no abuse of discretion occurred.

Two brief final comments are in order. First, defendants have failed to demonstrate they were prejudiced because the arbitration hearing was not continued. (*Manson v. Wilcox* (1903) 140 Cal. 206, 208-209; *SWAB Financial, LLC v. E\*Trade Securities, LLC*, *supra*, 150 Cal.App.4th at p. 1198; *Cothron v. Interinsurance Exchange* (1980) 103 Cal.App.3d 853, 860-861.) Defendants have failed to demonstrate they had any chance of prevailing in the arbitration had there been a continuance. Second, we need not address the question of whether all of defendants' claims have been forfeited because they chose not to appear at the arbitration. (See *A/S Ganger Rolf v. Zeeland Transportation, Ltd.* (S.D.N.Y. 1961) 191 F.Supp. 359, 363; *Comerica Bank v. Howsam* (2012) 208 Cal.App.4th 790, 826.)

17

## IV.  DISPOSITION

The judgment is affirmed.  Plaintiff, Lawyers' Mutual Insurance Company, shall recover its appeal costs from defendants, Law Offices of Diana Courteau, doing business as Courteau & Associates, and Diana L. Courteau.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P. J.


We concur:


KRIEGLER, J.


MINK, J.[*]

---

[*] Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.