Filed 9/18/14  Evans v. Trope & Trope CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SUSAN E. EVANS, | B252833 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC473081) |
| v. | |
| TROPE & TROPE et al., | |
| Defendants and Respondents. | |

APPEAL from orders of the Superior Court of Los Angeles County, John L. Segal and Suzanne G. Bruguera, Judges.  Affirmed in part; reversed in part.

The Law Offices of Robert Kahn and Robert A. Kahn for Plaintiff and Appellant.

Kolodny Law Group, Stephen A. Kolodny; Trope and Trope and Thomas Paine Dunlap, for Defendant and Respondent Trope and Trope LLP.

James A. Durant, in pro. per. for Defendant and Respondent James A. Durant.

## I.  INTRODUCTION

Plaintiff, Susan E. Evans, appeals from orders compelling arbitration and confirming an award against her.  Plaintiff claimed her former attorneys, defendant, Trope & Trope LLP, committed legal malpractice during its representation of her in a marital dissolution proceeding.  Plaintiff also claimed James A. Durant, an attorney with Trope & Trope and a codefendant, breached his fiduciary duties, intentionally inflicted emotional distress, and committed battery.  For clarity's sake we will refer to defendant and its employee, Mr. Durant, collectively as defendants.

Defendants moved for arbitration pursuant to a retainer agreement under Code of Civil Procedure section 1281.2.[1]  The motion to compel arbitration was granted by Judge John L. Segal.  An arbitrator, Retired Judge Eli Chernow, ruled in favor of defendants as to all claims.  Defendants filed a petition to confirm the award.  Plaintiff filed a petition to vacate the award.  The trial court granted defendants' petition and denied plaintiff's.  (Judge Segal granted the motion to compel arbitration.  Judge Suzanne G. Bruguera ruled on the confirmation petition.  For clarity's purposes, we will refer to Judge Bruguera as the trial court.)

Plaintiff asserts Judge Segal should not have compelled arbitration.  Plaintiff argues the arbitration agreement contains two unconscionable terms:  the arbitration selection method and right to appeal.  We affirm Judge Segal's order compelling arbitration.  Plaintiff also argues the order confirming the award must be reversed on the ground Judge Chernow failed to disclose matters which would cause a reasonable person to doubt his impartiality.  There is no evidence of bias on Judge Chernow's part.  But as to one of the failures to disclose, he failed to make a *timely* disclosure and thus the order confirming the award must be reversed.

---

[1] Further statutory references are to the Code of Civil Procedure.

## II.  BACKGROUND

### A.  Trope & Trope's Representation Of Plaintiff And Her Complaints

On January 11, 2006, plaintiff retained Trope & Trope to represent her in a marital dissolution proceeding against Michael Lombardi.  The action was then dismissed when it appeared plaintiff and Mr. Lombardi might reconcile.  On August 7, 2006, plaintiff again retained the law firm in a second dissolution proceeding.  Her case was initially assigned to Steven Knowles, a senior lawyer with the law firm.  She later requested her case be transferred to another lawyer.  Her case was transferred to another senior lawyer, Lawrence Leone.  Several other law firm lawyers also worked on the action.  At a late time in the case, Mr. Durant, under Mr. Leone's direction, became substantially involved in plaintiff's representation.

The retainer agreement between plaintiff and the law firm contained an arbitration clause, which provides:  "Any and all claims, disputes, allegations, or controversies arising out of or relating to this retainer agreement and/or Trope and Trope's representation of you, or any claimed breach thereof, shall be submitted to binding arbitration as provided hereafter.  This includes, but is not limited to, any claims of Trope and Trope against you for unpaid fees and costs, and any claims which you may have against Trope and Trope for, among other things, alleged negligence, malpractice, fraud, misrepresentation, alleged emotional distress, breach of fiduciary duty, or refund of fees already paid.  The arbitrator shall be a Retired Superior Court Judge or Commissioner who sat in a family law department in the Los Angeles County Superior Court for at least three years of the preceding fifteen years before any claim is made and who is currently active as a reference judicial officer handling family law matters. . . .  The arbitration shall be conducted consistent with the terms of [Code of Civil Procedure section] 1282 et seq. . . .  The reference in this paragraph to 'binding arbitration' means that the determination of the arbitrator is a binding final decision of any claim or controversy at the trial court level, but each party shall retain a right to appeal from the judgment on the

3

award rendered by the arbitrator through the normal California Appellate Court process." The marital dissolution judgment was entered on December 29, 2008. Trope & Trope provided no further legal services to plaintiff. All legal proceedings in the marital dissolution action occurred in Los Angeles County Superior Court.

On November 8, 2011, plaintiff filed a legal malpractice complaint against: the law firm; Sorrell Trope; Mr. Durant; and Mr. Leone. The complaint alleges the settlement agreement and stipulated judgment was "below the standard of care." The individually named defendants were dismissed because the law firm agreed to accept full responsibility for the alleged acts or omissions of its members and attorneys in the course of their employment. The agreement, dated November 22 and 23, 2011**,** was in the form of a stipulation which states: "IT IS HEREBY STIPULATED by and between Plaintiff SUSAN A. EVANS  and Defendants TROPE AND TROPE LLP, SORRELL TROPE, JAMES A. DURANT, and LAWRENCE E. LEONE, that in consideration of Plaintiff SUSAN A. EVANS dismissing the complaint against Defendants, SORRELL TROPE, JAMES A. DURANT, and LAWRENCE E. LEONE, Defendant, TROPE AND TROPE LLP agrees that it is responsible for any of the claims acts or omissions committed by SORRELL TROPE, JAMES A. DURANT, LAWRENCE E. LEONE and *any other of its members or employees in the course and scope of their employment with the firm.*" (Italics added.) On November 30, 2011, plaintiff dismissed the claims against Mr. Durant without prejudice.

On January 12, 2012, plaintiff filed a first amended complaint. In addition to the legal malpractice claim, plaintiff alleged defendants Trope and Mr. Durant breached their fiduciary duty and committed battery and intentional infliction of emotional distress. Plaintiff contended Mr. Durant engaged in sexual harassment and a sexual relationship with her.

4

B.  The Motion To Compel Arbitration

On December 20, 2011, the law firm filed its petition to compel arbitration. Plaintiff filed her opposition on January 10, 2012.  Plaintiff did not oppose arbitration. However, plaintiff did oppose one provision in the arbitration agreement.  Plaintiff objected to the requirement that the arbitrator be a former Los Angeles County Superior Court family law judge or commissioner.  Plaintiff argued the retainer agreement was an adhesive contract and the arbitrator selection provision was unconscionable.  Plaintiff's attorney, Robert A. Kahn, submitted a declaration which stated he did not believe his client could get an impartial arbitrator who previously served on the Los Angeles Superior Court.  Mr. Kahn based this assertion on Trope & Trope's "influence" in the family law community.  The declaration fails to identify a single retired judge or other bench officer by name who would be affected by Trope & Trope's influence in the family law community.  Also, Mr. Kahn asserted, under oath:  "It is likely that any proposed arbitrator who is a retired *Los Angeles County Superior* Court judge or commissioner has been hired by [Trope & Trope] as a mediator or arbitrator, and if not, will be influenced by the effect an award against [Trope & Trope] would have on their potential retention as an arbitrator or mediator in the future."  Trope & Trope filed its reply on January 13, 2012.  One of Trope & Trope's lawyers, Mark S. Patt, declared the law firm had received mixed results from retired Los Angeles County Superior Court family law judges and commissioners.  On January 24, 2012, Trope & Trope's motion to compel arbitration was granted.  At the hearing on the motion to compel arbitration, defendant represented Mr. Durant.  Plaintiff subsequently agreed to have the entire matter, including her claims against Mr. Durant, heard in the same arbitration as her allegations against Trope & Trope.

5

## C. Retired Judge Chernow's Selection And Disclosures

Mr. Kahn, plaintiff's attorney, suggested Judge Chernow be selected as the arbitrator. Defendants agreed to the selection. Judge Chernow confirmed his selection and on January 31, 2012, made written disclosures. Judge Chernow disclosed he conducted two one-day family mediations in which a party was represented by Trope & Trope. In addition, Mr. Leone had appeared before Judge Chernow for numerous matters on and off the bench. None of those matters had occurred in the past five years. In the "Prior Engagements" section of his January 31, 2012 disclosure letter, Judge Chernow concluded, "To the best of my knowledge, there is no relationship between me and any of the parties, lawyers or law firms that would impair my ability to act fairly and impartially in this matter."

## D. Judge Black, Trope & Trope's Witness

On July 31, 2012, Trope & Trope served its expert witnesses designation, which included Retired Judge Kenneth A. Black. Judge Black was a retired Los Angeles County Superior Court judge with many years of experience in the family law field. On August 15, 2012, plaintiff objected to the fees charged by Judge Black. Plaintiff requested that Judge Chernow rule on the amount charged by Judge Black to act as an expert witness. Judge Chernow first became aware of Judge Black's designation as an expert witness at that time.

## E. Mr. Knowles

As noted, plaintiff retained Trope & Trope on January 11 and August 7, 2006. Attached to the retainer agreement is a listing of the hourly billing rates in 2006 for attorneys employed by Trope & Trope. Mr. Knowles's billing rate was $575 per hour which was the third highest in the firm. According to Judge Chernow's original and

6

corrected awards, Mr. Knowles was, for some time, the lead attorney representing plaintiff in the marital dissolution action. Later, plaintiff requested that another attorney replace Mr. Knowles. Judgment was entered in the marital dissolution action on December 29, 2008. In 2009, Mr. Knowles left Trope & Trope's employ.

After the arbitration commenced, on June 13, 2012, Judge Chernow was advised there was an issue concerning Mr. Knowles's deposition. In a June 13, 2012 e-mail to Judge Chernow's assistant, plaintiff's counsel, Mr. Kahn, wrote in part: "[W]e have more discovery issues that need to be addressed, regarding the depositions of Steven Knowles and James Dunlap that were taken on Monday and Tuesday respectively." Plaintiff's counsel suggested a date for resolution of the dispute. Later on in June 13, 2012, Michael Trope (Mr. Trope), one of Trope & Trope's attorneys, sent an e-mail to Mr. Kahn and Judge Chernow suggesting a conference to resolve the dispute. In part, Mr. Trope wrote, "Mr. Kahn wants to see the settlement agreement between [Trope & Trope] and Steve Knowles so that he can determine if the agreement requires him to not make disparaging comments about [Trope & Trope], thus requiring him essentially as Mr. Kahn put it; to give willfully false testimony while under oath at his deposition . . . ."

At 5:04 p.m., Mr. Kahn sent the following e-mail to Judge Chernow concerning the discovery issues: "[J]ust so there are no surprises, when we do have a telephone conference, I will be providing Judge Chernow with quotes from various deposition transcripts that will show Mr. Trope's *extremely* unprofessional behavior towards me. The coup de grâce was yesterday, after our telephone conference (so it was off the record), when Mr. Trope called me a 'lying sack of sh-t.' I have a pretty thick skin, but I am getting fed up with his behavior and would like Judge Chernow to admonish Mr. Trope to conduct himself more professionally. I might add that Mr. Dunlop has been a perfect gentleman at all times."

Later in the early evening of June 13, 2012 at 6:00 p.m., Mr. Trope sent a lengthy e-mail relating to the pending discovery disputes. The e-mail begins: "I don't like to pull punches, I wear my emotions on my [sleeve]. I have never had a monetary sanction imposed upon me by any judicial officer; nor have I ever been reported for misconduct to

7

the [S]tate [B]ar other than [by] a client about 15 years ago complain[ing] that I had not returned their phone calls." After discussing another discovery dispute, Mr. Trope wrote about a dispute involving Mr. Knowles deposition. There is an unintelligible discussion about Mr. Trope referring to plaintiff's counsel as a "lying sack of s . . . ." (Ellipses in original.) Mr. Trope continued: "And believe me when I tell [Y]our [H]onor that I really wanted to say something much stronger. And let me explain why, since my integrity is now being questioned. The deposition of Steve Knowles was to take place on June 4, 2012. Without going into all the gory details, I informed Mr. Kahn that Mr. Knowles had a problem with lack of sleep and having lost his glasses which prevented him from appearing on June 4. Mr. Kahn indicated [in a written e-mail] that unless Mr. Knowles agreed to pay the court reporte[r] the for a non appearance certificate, and agreed that if he did not appear a week later for his deposition that he would automatically pay a $5,000 sanction and agree to be adjudicated, in advance, to be in criminal contempt of court, that he would not agree to continue the deposition for a week. I then informed Mr. Kahn that I was representing Mr. Knowles and to direct his communications to me only [I've known Mr. Knowles for 43 years, introduced him to [Trope & Trope] over 30 years ago, and we had a pre-existing [attorney-client] relationship dating back to 1977 when he was my attorney in numerous transactional matters]."

Mr. Trope's e-mail continued: "This led to over 15 e-mail exchanges between myself and Mr. Kahn between 6:30 and 8:30 [a.m.] on June 4, 2012 in which I was finally able to get Mr. Kahn to relent and to continue the deposition for a week. Here are the terms which were imposed[,] all of which [are] in written e-mail exchanges: [a] I had to pay the certificate for the non- appearance fee [which I did of about $300[]]; and [b] I had to agree that if Mr. Knowles did not appear for any reason at his deposition that I would give a $1,000 check to the charity of Mr. Kahn's choice. That is what I was required to offer in return for Mr. Kahn's agreement not to file a contempt against [Mr.] Knowles and to continue the deposition for a week without intervention from the arbitrator. Mr. Kahn even sent me an e-mail reminding me to bring my checkbook."

8

In the next paragraph of the June 13, 2012 e-mail, Mr. Trope continued: "On June 11, 2012, Mr. Knowles did appear for his deposition and was deposed until about 11:30 a.m. We took a lunch break. After the lunch break, I had Mr. Dunlop assist in raising Mr. Knowles's shirt, so that the court reporter and Mr. Kahn could view the absolutely horrific bruising covering the majority of Mr. Knowles['s] backside. We took pictures. I advised Mr. Kahn that Mr. Knowles took pain meds at the lunch break and we would have to pick another date to resume. Knowing at that point that Mr. Knowles was in agony, Mr. Kahn turned to his passive personality."

The paragraph of Mr. Trope's declaration which directly refers to Mr. Knowles states: "Then today the issue is raised about [Mr. Knowles's] agreement from January of 2009 when he left Trope & Trope's and started his own business. It apparently has a confidentiality and non 'bad mouth' clause. Mr. Knowles so testified on June 11, 2012. Mr. Knowles then went on to testify under oath at page 12 of the Rough of his deposition that[:] 'Let me add and then volunteer, I know of no disparaging comments that I would make about anyone in the firm[.'] And Mr. Kahn's new move today is that he wrote us a detailed e-mail that he will bring a motion to obtain the 2009 settlement agreement because he intends to argue at the time of the hearing in this matter that because Steve Knowles signed a settlement agreement in 2009 in which he receive monetary compensation that included the no 'bad mouth' clause, that Mr. Knowles is being paid in a manner in which he will give false testimony under oath![]" Mr. Trope's letter then concluded with four more paragraphs containing strong criticisms of Mr. Kahn.

On June 18, 2012, Judge Chernow ruled on the issue concerning Mr. Knowles' deposition: "On the issue of the amount paid to Mr. Knowles on his departure from the firm, my view is that in light of [Mr. Knowles's] very long tenure at the firm and his departure, whatever final compensation there was adds little to the question of his motivation to give testimony favorable or unfavorable to the firm. The small additional increment added by this information is outweighed by the policies in favor of confidentiality of private, personal financial information. [¶] . . . [¶] As to the added issue of whether Mr. Knowles must answer the question, about the relevance of the

timing of the date of issuance of [the] stock, he must answer the question and other questions of family law.  However, the question and answer will be understood as calling not for Mr. Knowles' opinion as an expert, but rather for his understanding of the issue at the time he rendered services on the case."  At another point in the June 18, 2012 e-mail, Judge Chernow issued a patient, dignified and courteous admonition concerning Mr. Trope's conduct.  Additionally, Judge Chernow indicated there was no need for an actual hearing on the dispute.  On June 19, 2012, Judge Chernow issued another ruling, "[Trope & Trope] is required to produce the portions of [Knowles's] termination agreement relating to non-disparagement and enforcement of [the] non-disparagement clause, and it apparently has already done so."  The June 19, 2012 e-mail from Judge Chernow contains another judicious admonition to all counsel to:  avoid speaking objections and arguments during depositions; maintain an attitude of courtesy towards one another; and avoid inappropriate language.  On an unspecified date after his deposition, Mr. Knowles died.

On November 10, 2012, a "Celebration of Steven Knowles Life" was held at a restaurant.  The notice of the celebration states:  "Celebration of Steven Knowles life will be hosted by Michael Trope, Joel Maniss and Michael Collum.  The 'Celebration' will take place on November 10, 2012, from 2:00 P.M. to 5:00 P.M. at Skylight Gardens, 1139 Glendon Avenue, Los Angeles. . . .  In the event you have not been to this unbelievable eatery you have missed something.  The food is off the chart, all fresh and the best part that I love is that the owner is always there.  And if Peter is not around, have no fear his son will be taking care that all is perfect.  [¶]  Skylight Gardens is owned by one of Steve's old friends, Peter Clinco.  Peter, Michael Trope and Steven all attended U.S.C. together back a million years ago.  Peter Clinco is along with being a very successful [restaurateur] is/was, still is, a lawyer!  So the old friendship makes sense and the best part is this, if Steven could return from the land of the departed for just 15-20 minutes, how happy he would be to see all his old friends having a 'toast' in his honor! [¶]  Please come in share some great stories all the while enjoying a glass of wine and some great appetizers.  There is a wonderful bar on the premises if you should like to

10

have something a little stronger.  Everything here at the Skylight Gardens is 'top shelf' and I personally know that Steven Knowles loved this place!"  The invitation concluded with an e-mail address at which to indicate an intention to attend the celebration.  Judge Chernow attended the November 10, 2012 celebration in honor of Mr. Knowles.  Mr. Durant did not attend the celebration.

The arbitration was held on November 26-28, and December 4-7, 10-11, 13-14, 17-19 and 21, 2012.  The arbitration continued on January 2-3, February 4-6, March 14 and April 1, 2013.  During the arbitration, on December 28, 2012, plaintiff's counsel served an exhibit list.  Plaintiff's exhibit list references three documents involving Mr. Knowles.

After the corrected arbitration award was issued, plaintiff's counsel in a July 10, 2013 letter indicated an intention to take the depositions of Judge Black and Judge Chernow.  The July 10, 2013 letter is addressed to Mr. Durant at defendant's address.  E-mail communications concerning the proposed deposition were served on Mr. Durant at defendant's e-mail address.  Judge Chernow was served with a deposition subpoena dated July 15, 2013.  Trope & Trope filed a motion to quash the subpoena in part upon the ground arbitration witnesses and an arbitrator could not be deposed.  On July 16, 2013, Judge Chernow sent an e-mail to all counsel.  In that e-mail, Judge Chernow explained: "To save us all time I will advise you my only contacts between the year 2000 and the commencement of this proceeding with Judge Black, any of [Trope & Trope's] lawyers, and [Steve] Kolodny and lawyers at his firm have been at legal education events . . . excepting only the two mediations with [the Trope Firm] disclosed at the commencement of this proceeding, and excepting a memorial event following the death of Steven Knowles."  The July 16, 2013 e-mail was the first time Judge Chernow revealed his attendance at the November 10, 2012 celebration.  Thereafter, Judge Chernow's deposition never occurred because Trope & Trope's motion to quash was granted.  The opposition to the motion to quash was served on Mr. Durant at defendant's offices.

11

### F. Arbitration Proceedings, Trope & Trope's Petitions To Confirm The Award And Plaintiff's Petition To Vacate

On November 26, 2012, arbitration hearings began. The arbitration hearings occurred over 22 days and concluded on April 1, 2013. On June 24, 2013, Judge Chernow issued his award in favor of Trope & Trope and Mr. Durant. On July 15, 2013, the arbitrator issued a corrected award. On July 15, 2013, Trope & Trope filed a petition to confirm the original award. Trope & Trope later substituted the corrected award. On July 19, 2013, Mr. Durant filed a petition to confirm the corrected award. Mr. Durant's address was the same as defendant's offices.

On July 10, 2013, plaintiff sent an e-mail to the parties and Judge Chernow indicating an intent to engage in certain discovery. Plaintiff contended Judge Chernow failed to make required disclosures concerning his relationship with Judge Black. Plaintiff intended to depose Judge Chernow. However, Trope & Trope moved to quash any subpoena to depose the arbitrator. As noted, Trope & Trope's motion to quash was granted.

On August 29, 2013, plaintiff moved to vacate the arbitration award based on Judge Chernow's alleged failure to make required disclosures which were grounds for disqualification. As noted, plaintiff argued Judge Chernow should have disclosed a prior relationship with Judge Black and Mr. Knowles. Plaintiff did not learn Judge Chernow had attended Mr. Knowles's memorial service until receiving the July 16, 2013 e-mail.

Concerning Judge Chernow's relationship with Judge Black, plaintiff cited to a rough transcript from the seventh day of arbitration, December 7, 2012. While Judge Black was testifying, the following occurred: "JUDGE CHERNOW: Just indicate on the record, you are [sic] supervising judge of family law when I served on the bench. [¶] THE WITNESS: That is correct. You were in Department 65. I was in Department 2. You took my place in Department 65. [¶] JUDGE CHERNOW: Okay." Plaintiff contended Judge Black was like a supervising attorney to Judge Chernow. Mr. Kahn denied hearing the exchange which is in the transcript of the arbitration.

12

Plaintiff again argued the arbitration clause's arbitrator selection provision was unconscionable. Plaintiff also contended for the first time that the arbitration clause contained an illusory provision regarding a party's appeal rights. Plaintiff asserted the arbitration clause did not clearly provide that legal errors were an excess of arbitral authority reviewable by the courts. Plaintiff asserted the lack of that provision rendered the entire arbitration clause unenforceable. Plaintiff relied on *Cable Connection, Inc. v. DIRECTV*, *Inc.* (2008) 44 Cal.4th 1334, 1365, in support of her new argument. Defendant's papers were served on Mr. Durant at its offices.

## G. Confirmation Of Arbitration Award

On October 9, 2013, the trial court heard the petitions to confirm and vacate the arbitration award. On November 13, 2013, the trial court entered its order granting defendants' confirmation petitions and denying plaintiff's petition to vacate the arbitration award. The trial court found no evidence of a personal relationship between Mr. Knowles and Judge Chernow. The trial court concluded the only professional relationship was that Judge Chernow sat in the family law department until 1993 and Mr. Knowles was a family law attorney. Additionally, the trial court concluded Judge Chernow had no disclosure duty because Mr. Knowles was not a party or an attorney for a party. The trial court found an objective reasonable person would not question Judge Chernow's impartiality because of the attendance at Mr. Knowles's celebration of life memorial service. The trial court found Mr. Knowles had no interest in the resolution of the action because he had left Trope & Trope's employ in 2009.

The trial court found no significant professional relationship between Judges Chernow and Black. The trial court found even if Judge Chernow was required to disclose the relationship, plaintiff was on notice of it during the December 7, 2012 arbitration hearing. The trial court concluded plaintiff's failure to raise this issue until July 10, 2013, after such knowledge and the arbitration's conclusion, constituted a waiver of the objection.

13

On November 14, 2013, judgment was entered in favor of defendants. Plaintiff subsequently appealed both the order compelling arbitration and the order confirming the arbitration award.

## III. DISCUSSION

### A. Plaintiff Fails To Prove The Arbitration Clause Was Unconscionable

#### 1. Legal principles

Section 1281 provides, "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." Both state and federal laws favor enforcement of valid arbitration agreements. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97 (*Armendariz*); *Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 25 [strong public policy in favor of arbitration].) However, courts will not enforce arbitration provisions that are unconscionable or contrary to public policy. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (U.S.), LLC* (2012) 55 Cal.4th 223, 247 (*Pinnacle Museum*); *Armendariz, supra,* 24 Cal.4th at p. 114.) The party opposing arbitration, in this case plaintiff, bears the burden of proving that an arbitration agreement is unenforceable based on unconscionability. (*Pinnacle Museum, supra,* 55 Cal.4th at p. 247; *Chin v. Advanced Fresh Concepts Franchise Corp.* (2011) 194 Cal.App.4th 704, 708.)

Our Supreme Court has stated: "Unconscionability consists of both procedural and substantive elements. The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-

14

sided.  [Citations.]" (*Pinnacle Museum, supra,* 55 Cal.4th at p. 246; *Armendariz, supra,* 24 Cal.4th at p. 114.)  Both procedural and substantive unconscionability must be shown. However, they need not be present to the same degree and are evaluated on a sliding scale.  (*Pinnacle Museum, supra,* 55 Cal.4th at p. 246; *Armendariz, supra,* 24 Cal.4th at p. 114.)  Our Supreme Court explained, "'[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'  [Citation.]" (*Pinnacle Museum, supra,* 55 Cal.4th at p. 247; accord, *Armendariz, supra,* 24 Cal.4th at p. 114.)

The trial court's arbitrability determination is reviewed de novo if there is no disputed extrinsic evidence.  (*Pinnacle Museum, supra,* 55 Cal.4th at p. 236; *Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1511.)  The unconscionability of an arbitration provision is ultimately a question of law.  (*Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1567; *Suh v. Superior Court, supra,* 181 Cal.App.4th at p. 1511.)  Thus, we review the contract de novo to determine unconscionability when extrinsic evidence is undisputed.  (*Ibid.*; *Gatton v. T–Mobile USA, Inc.* (2007) 152 Cal.App.4th 571, 579.)

## 2.  Plaintiff's contentions

Plaintiff presents three arguments as to why the arbitration clause was unenforceable.  First, plaintiff argues the retainer agreement was an adhesive contract. Plaintiff relies on *Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 817-828.  Plaintiff contends:  she was not an attorney and could not negotiate the retainer agreement's terms; she lacked representation prior to signing the retainer agreement; and Trope & Trope was in a superior bargaining position.  Second, plaintiff contends the retainer agreement's arbitrator selection provision was unconscionable because only a retired Los Angeles Superior Court bench officer could be selected.  Plaintiff asserts:  she could not receive a fair hearing before a retired Los Angeles Superior Court bench officer because Trope & Trope was highly influential in the Los Angeles family law community; Trope & Trope's

15

attorneys have likely appeared before all the retired family law judges of Los Angeles County; and arbitrators would be concerned about future losing future mediation and arbitration opportunities if they ruled against Trope & Trope. Third, plaintiff argues the entire arbitration agreement is unconscionable because the appeal provision is illusory and unenforceable. Plaintiff reasons that the arbitration clause's appeal rights term failed to comply with the requirements in *Cable Connection, Inc. v. DIRECTV*, *Inc., supra*, 44 Cal.4th at page 1361.

### 3. There is no ground to set aside the arbitration agreement

The evidence of procedural unconscionability is weak. There is no evidence plaintiff was unrepresented or would have been unable to secure other counsel. The only evidence of adhesion was that Trope & Trope always required their clients to sign an arbitration agreement. However, there is no evidence: on this occasion the retainer agreement was offered on a take it or leave it basis; of surprise or misrepresentation; the agreement was a preprinted form; or plaintiff felt she had no meaningful choice. Thus, the evidence of procedural unconscionability is weak. (*Nothdurft v. Steck* (2014) 227 Cal.App.4th 524, 535-536; *Trend Homes, Inc. v. Superior Court* (2005) 131 Cal.App.4th 950, 958, disapproved on other grounds in *Tarrant Bell Property, LLC v. Superior Court* (2011) 51 Cal.4th 538, 545, fn. 5; *Crippen v. Central Valley RV Outlet* (2004) 124 Cal.App.4th 1159, 1165-1166.)

Even if we accept as true the argument the retainer agreement was an adhesive contract, plaintiff has not demonstrated with any evidence the arbitrator selection provision was unconscionable. Defendants argue retired Los Angeles County Superior Court judges would have knowledge of the standard of care for the community in which the alleged malpractice occurred. The Court of Appeal has explained, "The standard [of care] is that of members of the profession 'in the same or a similar locality under similar circumstances' [citation]. . . ." (*Wright v. Williams* (1975) 47 Cal.App.3d 802, 809, citing *Smith v. Lewis* (1975) 13 Cal.3d 349, 355, fn. 3, overruled on a different point in *In*

*re Marriage of Brown* (1976) 15 Cal.3d 838, 851, fn. 14; but see *Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 470 ["Geographical location may be a factor in making that determination [of the standard of care], but, by itself, does not provided a practical basis for measuring similar circumstances."].) Plaintiff fails to demonstrate how requiring that a retired family law judicial officer from the Los Angeles County Superior Court be an arbitrator for the parties was overly harsh or one-sided. Plaintiff presented no evidence that Trope & Trope's alleged influence would so bias these proposed arbitrators they would rule for the firm or there was any danger such would occur.

Finally, plaintiff argues the discussion of appellate rights renders the agreement to arbitrate arbitrary, illusory and unconscionable. Plaintiff argues that the arbitration clause's reference to appeal rights fails to comply with the requirements identified in *Cable Connection, Inc. v. DIRECTV*, *Inc., supra,* 44 Cal.4th at page 1361. Plaintiff did not raise this specific argument that the reference to appellate rights was unconscionable until after the arbitration had concluded. Thus, this contention is forfeited. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 31; *Cummings v. Future Nissan* (2005) 128 Cal.App.4th 321, 328-329; *Reed v. Mutual Service Corp.* (2003) 106 Cal.App.4th 1359, 1372-1373.)

In any event, plaintiff's appeal argument is meritless. The challenged language is as follows: "Any judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The reference in this paragraph to 'binding arbitration' means that the determination of the arbitrator is a binding final decision of any claim or controversy at the trial court level, but each party shall retain a right to appeal from the judgment on the award rendered by the arbitrator to the normal California Appellate Court process."

There is nothing confusing of substance about the challenged language in the arbitration agreement. It emphasizes that a trial court will be reviewing a binding arbitration award. And, the language explains that there will be a right of appeal under the normal appellate processes of California. More importantly, nothing in the quoted

17

*Cable Connection, Inc.* language constitutes a ground for any unconscionability finding. Our Supreme Court emphasized that in order to avoid a dispute over merits-based judicial review, the party's rights should be clearly spelled out in the arbitration agreement. Also, the challenged language in the arbitration clause applies equally to both sides. Here, the parties did not "explicitly and unambiguously" state that they could seek judicial review of the dispute's merits. No doubt, that is a ground for not permitting judicial review of the merits, but it is not a basis for finding a substantive unconscionability.

B. The Arbitrator's Disclosure Requirements

1. Legal principles

Plaintiff argues Judge Chernow failed to comply with his disclosure obligations. Section 1281.9, subdivision (a) states: "[T]he proposed neutral arbitrator shall disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial, including all of the following: [¶] (1) The existence of any ground specified in Section 170.1 for disqualification of a judge. . . . [¶] (2) Any matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council pursuant to this chapter. . . . [¶] . . . [¶] (6) Any professional or significant personal relationship the proposed neutral arbitrator or his or her spouse or minor child living in the household has or has had with any party to the arbitration proceeding or lawyer for a party." The Courts of Appeal have defined person for purposes of section 1281.9, subdivision (a), "The 'person' referenced in this disclosure requirement concerning partiality is an objective, reasonable person." (*Agri-Systems, Inc. v. Foster Poultry Farms* (2008) 168 Cal.App.4th 1128, 1140; *Guseinov v. Burns* (2006) 145 Cal.App.4th 944, 960.) There are two timing provisions for disclosure. The first timing provision is statutory and pursuant to the Ethics Standards for Neutral Arbitrators in Contractual Arbitration (Ethics Standards). The first deadline is within 10 days of the arbitrator's proposed nomination or

18

appointment, "Subject only to the disclosure requirements of law, the proposed neutral arbitrator shall disclose all matters required to be disclosed pursuant to this section to all parties in writing within 10 calendar days of service of notice of the proposed nomination or appointment."  (§ 1281.9, subd. (b); Ethics Stds., std. 7(c)(1); see *Jakks Pacific, Inc. v. Superior Court* (2008) 160 Cal.App.4th 596, 601-602.)  The second time frame for mandatory disclosure is set forth in the Ethics Standards, standard 7(c)(2), "If an arbitrator subsequently becomes aware of a matter that must be disclosed . . . , the arbitrator must disclose that matter to the parties in writing within 10 calendar days after the arbitrator becomes aware of the matter."  (Ethics Stds, std. 7(c)(2); *Gray v. Chiu* (2013) 212 Cal.App.4th 1355, 1363-1364.)  The disclosure duty is continuing from the notice of the proposed nomination or appointment until the conclusion of the arbitration proceeding.  (Ethics Stds., std. 7(f); *Gray v. Chiu*, *supra*, 212 Cal.App.4th at pp. 1363-1364.)

If an arbitrator "failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware," the trial court must vacate the arbitration award.  (§ 1286.2, subd. (a)(6)(A); *Nemecek & Cole v. Horn* (2012) 208 Cal.App.4th 641, 646.)  Where the material facts are undisputed and the applicable standard is subject to objective analysis, we review this issue de novo.  (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 385-386 (*Haworth*); *Mt. Holyoke Homes, L.P. v. Jeffer Mangels Butler & Mitchell, LLP* (2013) 219 Cal.App.4th 1299, 1312.)  Where the facts are disputed, the Courts of Appeal have held:  "'We must accept the trial court's resolution of disputed facts when supported by substantial evidence; we must presume the court found every fact and drew every permissible inference necessary to supports its judgment, and defer to its determination of credibility of the witnesses and the weight of the evidence.' [Citation.]"  (*Fininen v. Barlow* (2006) 142 Cal.App.4th 185, 189-190; accord, *SWAB Financial v. E\*Trade Securities* (2007) 150 Cal.App.4th 1181, 1205.)

19

## 2. Judge Chernow's relationship with Judge Black

Plaintiff contends Judge Chernow should have disclosed a prior relationship with Judge Black from the time they both served in the family law departments of the Los Angeles County Superior Court. Plaintiff asserts Judge Black had a relationship akin to a supervising attorney with Judge Chernow. Plaintiff relies on Standard 7(d)(14)(A), which states: "A proposed arbitrator or arbitrator must disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed arbitrator would be able to be impartial, including . . . all of the following: [¶] . . . (15) Any other matter that: [¶] (A) Might cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial . . . ." (See § 170.1, subd. (a)(6)(A)(iii) [grounds for judicial disqualification when "[a] person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial"].)

There was no evidence Judge Chernow and Judge Black had a personal or close relationship. The prior work relationship occurred when Judge Chernow and Judge Black served on the bench together. Judge Chernow served on the Los Angeles County Superior Court from 1977 to 1993. Plaintiff, without citation to any evidence, argues Judge Black was like a supervising attorney to Judge Chernow. (See *Nemecek & Cole v. Horn, supra,* 208 Cal.App.4th at pp. 648-649 [arbitrator not required to disclose a witness served on the same executive committee and board]; *Luce, Forward, Hamilton & Scripps, LLP v. Koch* (2008) 162 Cal.App.4th 720, 734 [arbitrator not required to disclose membership on same board of directors as a party's witness and lawyer].) Judge Chernow and Judge Black's prior relationship on the Los Angeles County Superior Court was too "'slight or attenuated'" to require disclosure. (*Nemecek & Cole v. Horn*, *supra*, 208 Cal.App.4th at p. 649; *Luce, Forward, Hamilton & Scripps, LLP v. Koch*, *supra*, 162 Cal.App.4th at p. 734.) As a matter of law, the preexisting relationship issue would not cause a person aware of the facts to reasonably entertain a doubt Judge Chernow would not be impartial.

20

### 3. Judge Chernow's attendance at the celebration of Mr. Knowles's life

Plaintiff contends the attendance at Mr. Knowles's service would cause a person aware of it to reasonably entertain a doubt Judge Chernow could be impartial.  Though it is a close case, this scenario could cause an objective person to reasonably entertain a doubt as to Judge Chernow's impartiality.

The evidence shows Mr. Knowles was a senior lawyer with Trope & Trope. Mr. Knowles was directly implicated in the legal malpractice claim which includes allegations of negligence at the inception of the marital dissolution action.  The November 22 and 23, 2011 agreement provided Trope & Trope was responsible for the omissions of any of its members, which included Mr. Knowles and Mr. Durant.  Judge Chernow was aware that Mr. Knowles was involved in the case since at least June 13, 2012.  That is when the parties engaged in a heated dispute about Mr. Knowles's deposition.  The deposition centered upon Mr. Knowles's written settlement agreement with Trope & Trope which included alleged non-disparagement and confidentiality agreements.  Judge Chernow attended the celebration of Mr. Knowles's life on November 10, 2012.  Sixteen days after the celebration of Mr. Knowles's life, the taking of testimony commenced, concluding on April 1, 2013.  The invitation to attend the celebration was made in part by Mr. Trope who, at times, was one of the attorneys representing Trope & Trope.  Judge Chernow did not notify any of the parties regarding attendance at Mr. Knowles's memorial service until July 16, 2013, after arbitration was concluded.  On July 16, 2013, in response to the deposition subpoena, Judge Chernow first gave notice of his attendance at the celebration of Mr. Knowles's life.  This notification occurred after Judge Chernow had issued his corrected order.  As the celebration was held on November 10, 2012, the July 16, 2013 notification was untimely. (Ethics Stds., std. 7(c) & (f); *Gray v. Chiu*, *supra*, 212 Cal.App.4th at pp. 1363-1364.)

This case is distinguishable from our Supreme Court's decision in *Haworth*, *supra*, 50 Cal.4th at pages 378-379.  That case involved an arbitrator who did not disclose he had been publicly censured in 1996 by the Commission on Judicial Performance for:

21

making sexually suggestive remarks to female staff members; using crude, demeaning remarks and an ethnic slur; and creating "'an overall courtroom environment where discussion of sex and improper ethnic and racial comments were customary.'" (*Haworth*, *supra*, 50 Cal.4th at pp. 378-379.) The arbitrator presided over a claim involving a woman who alleged her male physician was negligent in performing plastic surgery. (*Id.* at p. 378.) The Supreme Court majority held: "[N]othing in the public censure would suggest to a reasonable person that [the arbitrator] could not be fair to female litigants, either generally or in the context of an action such as the one now before us. . . . The conduct that was the subject of the public censure occurred . . . more than 15 years prior to the arbitration proceeding. None of the conduct or comments for which [the arbitrator] was censured involved litigants or occurred in the courtroom while court was in session." (*Id.* at p. 390.)

Unlike the circumstances in *Haworth*, the fact requiring disclosure here, Judge Chernow's attendance at the celebration of Mr. Knowles's life, occurred *during* the arbitration. The celebration occurred immediately before the commencement of the taking of testimony. Mr. Knowles was deposed as an interested person. The malpractice allegations include the time period of 2006 through 2008. Mr. Knowles, a member of the firm, was assigned to plaintiff's case during that time period. As to Mr. Durant, the first amended complaint alleges the legal representation provided at the time of the settlement was below the standard of care. According to Judge Chernow's corrected award, Mr. Durant was "substantially involved" in representing plaintiff in connection with the settlement with her former spouse. Mr. Durant did so as an employee of defendant. Judge Chernow set forth Mr. Durant's role in the settlement and drafting of the ensuing judgment: "Mr. Leone served as lead counsel at the mediation, although Mr. Durant was present. Settlement was reached at the mediation on July 7, 2008, and a written settlement agreement was signed. Although Mr. Durant worked on various matters before the mediation, his major role in the case was to negotiate and prepare a stipulation for judgment and judgment based on the signed settlement agreement." And as noted, defendant agreed to pay any damages resulting from these allegations of professional

22

negligence involving Mr. Durant and Mr. Knowles. And Mr. Durant was still employed by defendant during the arbitration and the enforcement proceedings.

Further, Judge Chernow believed the celebration of Mr. Knowles's life was a matter of material significance. Judge Chernow gave notice of his attendance at the November 10, 2012 celebration in his July 16, 2013 e-mail after being served with the deposition subpoena. Attendance at the celebration at the invitation of one of Trope & Tropes' attorneys, could indicate favorable opinions of Mr. Knowles's friends, family and former colleagues.

We are not finding actual bias existed. However, the question is whether a reasonable person aware of the facts could reasonably entertain a doubt that Judge Chernow could be impartial in this case. (See § 1281.9, subd. (a); *Haworth v. Superior Court*, *supra*, 50 Cal.4th at pp. 385-386.) Under these circumstances, attendance at the celebration would cause a person aware of the facts to reasonably entertain a doubt that the Judge Chernow would be able to be impartial. (§ 1281.9, subd. (a).) Because Judge Chernow failed to make a *timely* required disclosure under section 1281.9, subdivision (a), the arbitration award must be vacated. (§ 1286.2, subd. (a)(6)(A); *Nemecek & Cole v. Horn*, *supra*, 208 Cal.App.4th at p. 646.)

## IV.  DISPOSITION

The January 24, 2012 order compelling arbitration is affirmed.  The November 13, 2013 order confirming the arbitration award is reversed.  All parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P. J.


I concur:


MINK, J.[*]

---

[*]Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

MOSK, J., Concurring

I concur.

I believe the arbitration clause in this case could have been found unconscionable, depending on the facts. Under the clause, the arbitrator had to be a retired Los Angeles County Superior Court judge who sat in the family law department and "who is currently active as a reference judicial officer handling family law matters." In other words, the arbitrator was to be someone in Los Angeles who is likely to be hired by a family law firm like Trope & Trope for compensation in a private dispute resolution mechanism.

A retired judge from other large counties in California or who may have been family law judges or lawyers but who are not active as "a reference judicial officer handling family law matters" are ineligible. There could be no reason for such a restrictive clause, other than to insure that the arbitrator might well have some likelihood of being retained by or selected by Trope & Trope in the future. Having as an arbitrator one who has a financial incentive with regards to Trope & Trope gives the appearance of bias.

The arbitration clause is analogous to the one in *Engella v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, in which it was argued that a party to an arbitration clause had an unfair advantage because the panel from which the arbitrator was to be selected would result in that party being a "repeat player" in arbitration before that arbitration and would have information on the arbitrators unavailable to the other party. The court held that the arbitration agreement was not "per se unconscionable." (*Id.* at p. 986.)

The "repeat player" situation is similar to the consequences of the arbitration clause here. In both instances, the arbitrator is likely to be utilized by one of the parties in the future. In *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, employees were compelled to arbitrate their employment claims against their employer, Countrywide Securities Corporation. The employees argued, inter alia, that the process was flawed

because it did not guarantee a neutral arbitrator.  The claims were to be arbitrated by the National Arbitration Forum (NAF) in California where there were only a few NAF arbitrators.  Thus, the employer necessarily would repeatedly appear before the same group of arbitrators.  The court said, "While our Supreme Court has taken notice of the 'repeat player effect,' the court has never declared this factor renders the arbitration agreement unconscionable per se.  The court apparently believes the provisions of Code of Civil Procedure section 1281.6 will keep the proceedings 'honest' and neutral.  The first sentence in section 1281.6, however, states:  'If the arbitration agreement provides a method of appointing an arbitrator, that method shall be followed.'  The Countrywide agreement provides the arbitrator will be selected by NAF.  Therefore, the weaker party's participation in the selection of the arbitrator, which is sometimes available under the statute, does not arise under the Countrywide agreement.  [¶]  We too are not prepared to say without more evidence the 'repeat player effect' is enough to render an arbitration agreement unconscionable.  However, given the low threshold of substantive unconscionability in this case we find the lack of mutuality as to arbitrable claims together with the disadvantages to the employee in using NAF as the arbitration provider renders the Countrywide arbitration agreement substantively unconscionable." (*Id.* at pp.178-179.).

California law requires that both procedural and substantive unconscionability be present in order for a court to refuse to enforce a contract or clause under the doctrine of unconscionability.  But the two types of unconscionability need not be present in the same degree.  Rather, there is sliding scale whereby the more substantively oppressive a contract term is, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable and vice versa.  (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114.)  Here, the evidence of procedural unconscionability is scarce.  The only evidence of it is that the law firm gave a form agreement to its prospective client.  And while there is some conceivable substantive unconscionability by virtue of the clause as to the requirements for the

2

arbitrator, there is no evidence as to the effect of such a clause.  For example, there is no evidence of how many retired judges fulfill the requirements and whether in fact such arbitrators are used by firms like Trope & Trope.  Interestingly, Trope & Trope accepted Evan's proposed arbitrator even though the arbitrator did not strictly fit within the requirements.  The arbitrator had retired from the court more than 15 years before being selected.

Under the circumstances and based on the record, the unconscionability of the arbitration provision has not been established.


MOSK, J.