Filed 6/22/15  Morris v. O'Neill CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| RENA MORRIS, | B258467 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS147624) |
| v. | |
| MICHAEL O'NEILL et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Joseph A. Kalin, Judge.  Affirmed.

John M. Gerro for Plaintiff and Appellant.

No appearance for Defendants and Respondents.

_____

Rena Morris appeals from the denial of her petition to vacate a contractual arbitration award and to rescind her agreement to arbitrate her dispute with Michael O'Neill doing business as O'Neill Construction, a general contractor, relating to her home improvement agreement with O'Neill. The arbitrator found Morris had established claims against O'Neill totaling $31,250 for unfinished or inadequately performed work on the home remodeling project, but concluded there was $32,957.11 due on the parties' contract and awarded O'Neill the net balance of $1,707.11. Morris sought to vacate the award on the grounds the underlying contract violated public policy and should not have been enforced, the award was obtained by fraud or other undue means, the arbitrator failed to disclose required information and was biased in favor of the general contractor and her consent to arbitration was obtained through material misrepresentations concerning the arbitration process. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Dispute Regarding O'Neill's Work on the Remodeling Project*

Morris and O'Neill signed a proposal and contract for home improvement on December 23, 2010 for additions, remodeling and alterations to Morris's home in Pasadena with a total price of $309,945. The contract provided the work was to be done in accordance with the approved plans attached as Addendum "A." The addendum included a cost breakdown for separate items of work. Overhead and profit of $46,700 (approximately 2.5 percent for overhead; 15 percent for profit) was included in the total contract price. Morris gave O'Neill a check for $30,994.50 (10 percent of the contract price) the same day as the contract was signed.

During the period O'Neill worked on the project, he invoiced a total of $278,258.50; Morris paid O'Neill $270,803 and also paid approximately $32,000 for appliances, hardware and similar items that were separately billed. In December 2012 Morris refused to pay O'Neill's most recent invoice (for $7,455.50) because of her concerns about the quality of the work being performed and O'Neill's failure to complete "punch list" items. O'Neill told Morris he would not continue working without payment

2

of the invoice; Morris responded that she wanted assurances the defective work and punch list items would be corrected. An impasse was reached; and O'Neill stopped working on the project.

2. *Morris's Complaint to the Contractors State License Board and Election To Arbitrate the Dispute*

Morris filed a complaint against O'Neill with the Contractors State License Board (CSLB). The CSLB sent an expert to Morris's residence to inspect and evaluate O'Neill's work. In a July 10, 2013 report of inspection and estimate, a portion of which is attached as an exhibit to Morris's petition to vacate the arbitration award, the CSLB expert concluded the work did not "meet accepted trade standards for goods & workman-like construction" and estimated the cost to complete or correct the work to be $51,284.56.

Rather than proceed with a disciplinary proceeding, the CSLB offered the parties the option of arbitrating their dispute through the CSLB's voluntary arbitration program as authorized by Business and Professions Code section 7085 et seq.[1] The Voluntary Arbitration Program Guide provided by CSLB to Morris and O'Neill with its arbitration proposal explained, after the parties have agreed to arbitrate, CSLB refers the dispute to an "arbitration forum" to administer the arbitration: "The arbitration forum has professional arbitrators throughout California who have been trained to resolve construction disputes. All have undergone intensive training to ensure that both parties receive a fair hearing." The brochure also advised, "Each party will be responsible for his or her own case presentation at the hearing, including relevant documents." The Arbitration Mediation Conciliation Center (AMCC) is the dispute resolution firm used by CSLB to administer its voluntary arbitration program.

Morris agreed to arbitration, listed items and related costs caused by O'Neill's defective workmanship or failure to perform, and demanded the maximum $50,000 award permitted by the CSLB program. O'Neill also agreed to arbitration; disputed

---

[1] Undesignated statutory references are to this code.

3

Morris's claims, asserting her estimated costs to complete or repair were excessive and many of the listed items were not part of the contract; and sought his own award of $30,000 (the approximate unpaid amount on the original home improvement contract). Morris and O'Neill were provided with the names of three potential arbitrators and their resumes. The parties selected Thomas L. Craigo.

### 3. *The Arbitration*

The arbitration took place on November 13, 2013, four to six weeks after the arbitrator had been selected. Neither side conducted any discovery. At the hearing Morris presented the expert testimony of the CSLB inspector and a contractor she had retained who testified regarding the costs to complete the work O'Neill allegedly had not done. O'Neill, who was represented by counsel, testified, and Morris cross-examined him. O'Neill also presented declarations from an architect, electrician and a flooring subcontractor regarding the work they had performed at Morris's residence. The arbitrator overruled Morris's objections that she had not been told declarations could be submitted and that their use unfairly deprived her of an opportunity to cross-examine those three witnesses.

The arbitrator issued his award on November 27, 2013. He found in favor of Morris on 11 of her claims (for example, he found she was entitled to $7,800 to "[r]emove and replace concrete driveway not done per contract" and $500 to "[r]eplace one (1) kitchen cabinet door and hardware, and one (1) glass bull nose tile in kitchen and re-grout, and adjust upper cabinet door in laundry room"), but denied four of her claims as not within the scope of O'Neill's work. In total, the arbitrator found Morris had established $31,250 in claims for unfinished or inadequately performed work on the home remodeling project. However, he also concluded there was $32,957.11 due on the parties' contract and awarded O'Neill the net balance of $1,707.11.

On December 7, 2013 Morris submitted an application to correct the arbitration award that challenged the arbitrator's calculation of many of the items in his award, including the use of the full contract price as a basis for determining O'Neill's

4

entitlement to an offset. Morris argued O'Neill did not incur overhead and should not earn a profit on items he did not complete. After receiving a response from O'Neill's counsel, the arbitrator denied the application, noting, "The Arbitrator has affirmed the amounts and descriptions listed in the Award, including the contract balance due Respondent. Accordingly, since no typographical error or miscalculation has been made, the Arbitrator finds no grounds for a correction under the purview of Business and Professions Code [section] 7085.5(s)."

4. *Morris's Motion To Vacate the Arbitration Award*

On March 5, 2014 Morris petitioned the superior court to vacate the arbitration award.[2] Her petition was supported by her own declaration and numerous exhibits. Morris contended aspects of her contract with O'Neill violated the requirements of the Business and Professions Code for home improvement contracts and, as such, was contrary to public policy and should not have been enforced. She also asserted material information about the arbitration process was not disclosed to her, particularly the unavailability of discovery and the fact that most of the possible arbitrators are Caucasian males and heavily aligned with the construction or insurance industries. As a result, she argued, her consent to arbitration was not informed. Morris additionally contended the arbitration award had been obtained by fraud or other undue means because O'Neill submitted altered or forged documents and the improper denial of prehearing discovery prevented her from properly responding to that material. Finally, Morris argued that both AMCC and arbitrator Craigo had failed to comply with disclosure requirements governing arbitration, including providing necessary information about potential conflicts of interest, and that Craigo exhibited extreme bias in favor of O'Neill.

O'Neill filed a response to the petition with his own declaration and documentary exhibits. He also filed evidentiary objections (primarily on the grounds of lack of

---

[2] The petition was filed by Morris herself with no identification of counsel who might be representing her. By the time her reply memorandum was filed, Morris was formally represented by counsel.

foundation or hearsay) to significant portions of Morris's declaration in support of the petition. Morris filed a reply memorandum, a reply declaration and a response to the evidentiary objections.

A hearing on Morris's petition was held on May 13, 2014, and the matter was submitted. The appellate record does not include a reporter's transcript of the hearing. On May 19, 2014 the court issued its ruling on submitted matters, without further written findings or explanation, sustaining nine of O'Neill's evidentiary objections, denying the petition to vacate the arbitration award and denying the petition for relief from stipulation to voluntary CSLB arbitration.

**DISCUSSION**

1. *Standard of Review*

As the Supreme Court and Courts of Appeal have repeatedly held, when parties agree to private arbitration, the scope of judicial review is strictly limited to give effect to the parties' intent to bypass the judicial system and thereby avoid potential delays at the trial and appellate levels. (See *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 10 (*Moncharsh*); *Gray v. Chiu* (2013) 212 Cal.App.4th 1355, 1362.) Generally, a court may not review the merits of the controversy between the parties, the validity of the arbitrator's reasoning or the sufficiency of the evidence supporting the arbitration award. (*Moncharsh,* at p. 10.) "'[I]t is within the power of the arbitrator to make a mistake either legally or factually. When parties opt for the forum of arbitration they agree to be bound by the decision of that forum knowing that arbitrators, like judges, are fallible.'" (*Id.* at p. 12; accord, *Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916 ["[g]enerally, courts cannot review arbitration awards for errors of fact or law, even when those errors appear on the face of the award or cause substantial injustice to the parties"]; *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1340 ["the California Legislature 'adopt[ed] the position taken in case law . . . that is, "that in the absence of some limiting clause in the arbitration agreement, the merits of the award, either on questions of fact or of law, may not be reviewed except as provided in the statute"'"].)

6

Judicial review of an arbitration award is limited to "circumstances involving serious problems with the award itself, or with the fairness of the arbitration process." (*Moncharsh, supra,* 3 Cal.4th at p. 12.) The only grounds on which a court may vacate an award are enumerated in Code of Civil Procedure section 1286.2.[3] "[C]ourts are authorized to vacate an award if it was (1) procured by corruption, fraud, or undue means; (2) issued by corrupt arbitrators; (3) affected by prejudicial misconduct on the part of the arbitrators; or (4) in excess of the arbitrators' powers." (*Cable Connection, Inc. v. DIRECTV, Inc., supra*, 44 Cal.4th at p. 1344.) "There is a presumption favoring the validity of the award, and [the party challenging the award] bears the burden of establishing [a] claim of invalidity." (*Betz v. Pankow* (1993) 16 Cal.App.4th 919, 923.)

Although a court generally may not review an arbitrator's decision for errors of fact or law, an arbitrator exceeds his or her power within the meaning of Code of Civil Procedure section 1286.2 and the award is properly vacated when it violates an explicit legislative expression of public policy (see *Moncharsh, supra*, 3 Cal.4th at p. 32; *Cotchett, Pitre & McCarthy v. Universal Paragon Corp.* (2010) 187 Cal.App.4th 1405, 1416-1417), or when granting finality to the arbitration would be inconsistent with a

---

[3]  "[T]he court shall vacate the award if the court determines any of the following: [¶] (1) The award was procured by corruption, fraud or other undue means. [¶] (2) There was corruption in any of the arbitrators. [¶] (3) The rights of the party were substantially prejudiced by misconduct of a neutral arbitrator. [¶] (4) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted. [¶] (5) The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title. [¶] (6) An arbitrator making the award either: (A) failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware; or (B) was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision. However, this subdivision does not apply to arbitration proceedings conducted under a collective bargaining agreement between employers and employees or between their respective representatives." (Code Civ. Proc., § 1286.2, subd. (a).)

party's unwaivable statutory rights. (*Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 679; see *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 106; *Moncharsh*, at p. 32; *Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, 38-39 (*Ahdout*).)

Absent findings on disputed facts, we independently review the superior court's order confirming or denying a request to vacate the award, including a determination whether the arbitrator failed to make required disclosures (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 385-387; *Gray v. Chiu, supra,* 212 Cal.App.4th at p. 1362) and whether the arbitrator exceeded his or her powers in granting relief (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 2; *Malek v. Blue Cross of California* (2004) 121 Cal.App.4th 44, 55). However, to the extent the superior court's decision to grant the petition to confirm and deny the petition to vacate the award rests on its determination of disputed factual issues, we review the court's orders under the substantial evidence standard. (*Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1217; *Malek,* at pp. 55-56; cf. *Haworth*, at pp. 382-383.)

2. *O'Neill's Violation of Several Statutory Requirements for Home Improvement Contracts Does Not Preclude Enforcement of the Contract Through Arbitration or Justify Expanded Judicial Review of the Arbitration Award*

The Supreme Court in *Moncharsh*, *supra*, 3 Cal.4th at page 31 recognized that "'the rules which give finality to the arbitrator's determination of ordinary questions of fact or of law are inapplicable *where the issue of illegality of the entire transaction* is raised in a proceeding for the enforcement of the arbitrator's award.'" In addition, the *Moncharsh* Court acknowledged "there may be some limited and exceptional circumstances justifying judicial review of an arbitrator's decision when a party claims illegality affects only a portion of the underlying contract. Such cases would include those in which granting finality to an arbitrator's decision would be inconsistent with the protection of a party's statutory rights. [Citation.] [¶] Without an explicit legislative expression of public policy, however, courts should be reluctant to invalidate an arbitrator's award on this ground." (*Id*. at p. 32.) As recently summarized by our

8

colleagues in Division Four of this court in *Ahdout, supra,* 213 Cal.App.4th at page 37, "Numerous courts have since construed *Moncharsh* to stand for the proposition that an arbitrator exceeds its power within the meaning of Code of Civil Procedure section 1286.2 by issuing an award that violates a party's statutory rights or 'an explicit legislative expression of public policy.'" [Citations.] However, "[t]his exception is applicable only when there has been '"a clear expression of illegality or public policy"' that undermines the presumption in favor of private arbitration." (*Ahdout*, at p. 38.)

Seeking to invoke this public policy exception to the general rule of limited judicial review of arbitration awards, Morris has identified in her appellate brief, as she did in her petition to vacate the arbitration award, a number of ways in which she contends the home improvement contract provided by O'Neill violated the disclosure requirements for such contracts set forth in section 7159. For example, it failed to include the approximate start and completion dates for the project or to provide written notice whether O'Neill had commercial general liability insurance and whether he and his subcontractors had worker's compensation insurance.[4] In addition, the contract did not state, as required, "the downpayment may not exceed $1,000 or 10 percent of the contract price, whichever is less"; and O'Neill, in fact, asked Morris to provide an initial deposit of $30,994.50 in violation of section 7159.5, subdivision (a)(3).

Morris emphasizes that violation of the statutory limit on downpayments is a misdemeanor (see § 7159.5, subd. (b)), and failure by a contractor to provide the required information, notices and disclosure in the contract "is cause for discipline." (§ 7159, subd. (a)(5).) As a consequence, she argues, the home improvement contract was illegal and should not have been enforced by the arbitrator. In support of her position Morris quotes extensively from *Ahdout, supra*, 213 Cal.App.4th 21, in which the court held deference to the arbitrator's decision was not required and the trial court should have

---

[4] Our review of the contract is substantially hampered by Morris's failure to include a full copy of the contract and attachments in her Appellant's Appendix, apparently by virtue of copying only one side of a document printed on both sides of each page.

9

conducted a de novo review of the evidence to determine whether disgorgement of compensation for construction work was required by section 7031 because the work was performed by an unlicensed contractor: "[S]ection 7031 constitutes an 'explicit legislative express of public policy,' that if not enforced by an arbitrator, constitutes grounds for judicial review. 'The purpose of the [CSLL] licensing law is to protect the public from incompetence and dishonesty in those who provide building and construction services. . . . Section 7031 advances this purpose by withholding judicial aid from those who seek compensation for unlicensed contract work.'" (*Ahdout*, at p. 38.)

Morris's reliance on *Ahdout* is misplaced. There is a fundamental difference between the attempt to recover compensation through judicial confirmation of an arbitration award for the unlicensed performance of contracting work, which the Legislature has absolutely prohibited in section 7031, subdivision (a), and a licensed contractor's efforts to recover for his or her work notwithstanding the failure to comply with the disclosure requirements for a written home improvement contract, governed by sections 7150 et seq. and at issue in this case. As the Supreme Court held in *Asdourian v. Araj* (1985) 38 Cal.3d 276, the rule that a contract made in violation of a regulatory statute is unenforceable is not an inflexible one: "[T]he rule will not be applied where the penalties imposed by the Legislature exclude by implication the additional penalty of holding the contract void. [Citations.] Further, illegal contracts will be enforced to avoid unjust enrichment to the defendant at the expense of the plaintiff." (*Id.* at p. 291.) Accordingly, even an oral contract for home improvements, not one that simply omits some of the required disclosures, may be enforced even though it violates section 7159: "Violation of section 7159 is a misdemeanor punishable by fine and/or imprisonment. Nothing in the statute declares that an oral contract entered into in contravention of section 7159 shall be void." (*Asdourian*, at p. 291; see *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 439 ["As the *Asdourian* majority noted, the statutes in question made violation of the writing requirement a misdemeanor, but they nowhere expressly declared that a noncomplying

10

contract was void. . . . The agreements in question, the majority noted, were not "'intrinsically illegal'" (i.e., wrongful in their object) [citation]; thus, they were not automatically void, but merely voidable 'depending on the factual context and the public policies involved."].)

In *Hinerfeld-Ward, Inc. v. Lipian* (2010) 188 Cal.App.4th 86, Division Four of this court—the same division that decided *Ahdout*—applied *Asdourian* and upheld enforcement of an oral contract even though it violated the statutory requirement that home improvement contracts be in writing. Affirming the trial court's judgment, the appellate court reasoned the enforcement of an oral home improvement contract depends on an evaluation of the particular facts of the case including the relative sophistication of the homeowners or their representatives on the project and whether it would be unjust not to allow recovery for substantial work that had been performed. The court concluded, based on the evidence presented at trial, "this is a compelling case warranting enforcement of the oral home improvement contract under the *Asdourian, supra*, 38 Cal.3d 276, line of authority." (*Hinerfeld-Ward,* at pp. 94-95; see also *Arya Group, Inc. v. Cher* (2000) 77 Cal.App.4th 610, 615-616 [§ 7164, which was intended to extend the protections of § 7159 to consumers who contract to construct single-family residences and which, like § 7159 requires those contracts to be in writing with specified notices and disclosures, did not bar enforcement of an oral contract for construction of a single-family residence; failure to enforce the oral contract would have unjustly enriched the owner because a substantial part of the work had been completed before the contractor was terminated].)

Contrary to Morris's contention, her home improvement contract with O'Neill, even if it failed to comply with all the requirements of sections 7159 and 7159.5, was not void or per se unenforceable. As demonstrated by the *Hinerfeld-Ward* and *Arya Group,* decisions, the nature of the *Asdourian* inquiry—evaluating the significance of the regulatory violations involved and the relative equities of the homeowner's and contractor's situation— is precisely the type of fact-intensive question that the parties'

11

voluntary decision to arbitrate properly commits to the arbitrator. The public policy exception to the general rule that the merits of an arbitration award are not subject to review by the superior court is inapplicable here, and the superior court did not err in denying the petition to vacate the award on this ground.

3. *The Award Was Not Obtained by Fraud or Other Undue Means*

Courts have "set forth a three-part test to be used to determine whether an arbitration award should be vacated for fraud. 'First, the movant must establish the fraud by clear and convincing evidence. [Citations.] Second, the fraud must not have been discoverable upon the exercise of due diligence prior to or during the arbitration. [Citations.] Third, the person seeking to vacate the award must demonstrate that the fraud materially related to an issue in the arbitration.'" (*Pour Le Bebe, Inc. v. Guess? Inc.* (2003) 112 Cal.App.4th 810, 830.)

Morris's fraud argument is predicated on her assertions that O'Neill submitted altered or forged documents (receipts for purchases) as exhibits during the arbitration proceeding and, because she was denied the opportunity to conduct any discovery prior to the arbitration hearing, she was unable to respond appropriately to the fabricated evidence. Morris further contends she only learned she would not be permitted any discovery after she had elected arbitration and, accordingly, could not have discovered the purported fraud prior to or during the arbitration.

In support of her argument the arbitration award was obtained by O'Neill's use of fraudulent exhibits, Morris asserted in her declaration, "Many providers have rules that create a nearly absolute right for the exchange of documents and witness lists . . . . However, when I requested subpoenas and document exchange from AMCC I was informed that no discovery was permitted whatsoever." O'Neill's objection to this statement as hearsay and lacking foundation was sustained by the superior court, and Morris has not challenged that evidentiary ruling on appeal. Accordingly, that statement was not considered by the superior court and is not properly part of the record on appeal. (See *Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074

12

[appellant's failure to properly challenge the trial court's many evidentiary rulings forfeits the issue on appeal]; *Jessen v. Mentor Corp.* (2008) 158 Cal.App.4th 1480, 1492, fn. 14 [same].) Morris proffered no other evidence to support her claim she requested and was denied the opportunity to conduct discovery—in particular, she provided no material from AMCC discussing discovery rights and no correspondence with either AMCC or arbitrator Craigo in which she requested discovery from O'Neill, let alone any confirmation of her assertion that those requests were denied. In contrast, in his opposition to the petition, O'Neill declared Morris never contacted him to request any discovery during the four-to-six-week period between the selection of the arbitrator and the date of the arbitration hearing. "Had she contacted me directly she would have received all discovery requested."

In sum, even if Morris had established that O'Neill submitted falsified receipts or other fabricated evidence at the hearing, something we do not decide, she has failed to demonstrate the purported fraud could not have been discovered prior to or at the arbitration. Accordingly, there was insufficient evidence to justify vacating the arbitration award on this ground. (See *Pour Le Bebe, Inc. v. Guess? Inc., supra,* 112 Cal.App.4th at p. 830.)

4. *The Arbitrator Did Not Violate Any Applicable Disclosure Requirements*

a. *The governing law*

Since 1994 Code of Civil Procedure section 1281.9, part of the California Arbitration Act (Arbitration Act) (Code Civ. Proc., § 1280 et seq.),[5] has required a proposed neutral arbitrator to disclose various matters relating to his or her ability to be impartial, specifically including "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial . . . ." (Code Civ. Proc., § 1281.9, subd. (a); see *Mahnke v. Superior Court*

---

[5] The Arbitration Act "'represents a comprehensive statutory scheme regulating private arbitration in this state.' [Citation.] The statutory scheme reflects a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.'" (*Haworth v. Superior Court, supra*, 50 Cal.4th at p. 380.)

13

(2009) 180 Cal.App.4th 565, 573-574.)[6] In 2002 the Legislature amended Code of Civil Procedure section 1281.9, subdivision (a)(1), to specifically require a proposed neutral arbitrator to disclose "whether or not he or she has a current arrangement concerning prospective employment or other compensated service as a dispute resolution neutral or is participating in, or, within the last two years, has participated in, discussions regarding such prospective employment or service with a party to the proceeding."

Code of Civil Procedure section 1281.95, applicable to contractual arbitration of residential construction defect claims, similarly requires the arbitrator to disclose, among other matters, "whether the arbitrator or his or her employer or arbitration service had or has a personal or professional affiliation with either party." (Code Civ. Proc., § 1281.95,

---

[6] As part of a revision of Code of Civil Procedure section 1281.9 in 2001, the Legislature added current subdivision (a)(2), which requires disclosure by proposed neutral arbitrators of "[a]ny matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council" (Stats. 2001, ch. 362, § 5, pp. 3491-3492) and, at the same time, enacted Code of Civil Procedure section 1281.85, which directed the Judicial Council to adopt ethical standards for all neutral arbitrators— standards that were specifically to "address the disclosure of interests, relationships, or affiliations that may constitute conflicts of interest, including prior service as an arbitrator or other dispute resolution neutral entity, disqualifications, acceptance of gifts, and establishment of future professional relationships." (Stats. 2001, ch. 362, § 4, pp. 3490-3491.) Now incorporated into the California Rules of Court, the Ethics Standards for Neutral Arbitrators in Contractual Arbitration (Ethics Standards) "establish the minimum standards of conduct for neutral arbitrators who are subject to these standards. They are intended to guide the conduct of arbitrators, to inform and protect participants in arbitration, and to promote public confidence in the arbitration process." (Ethics Std. 1(a).)

Although Morris bases her contention that Craigo violated his disclosure obligations in substantial part by referring to provisions of the Ethics Standards, Standard 3(b)(2)(G) provides the standards do not apply to an arbitrator serving in "[a]n arbitration of a complaint filed against a contractor with the [CSLB] under Business and Professions Code sections 7085 through 7085.7." The April 2002 report to the Judicial Council that recommended the initial adoption of the Ethics Standards explained CSLB arbitrations were exempted because sections 7085 through 7085.7 appeared to establish a statutory arbitration program that was separate and distinct from arbitration under the Arbitration Act.

14

subd. (a).)  And section 7085.5, subdivision (c), which provides rules of conduct for CSLB-referred arbitrations, as here, states, "No person shall  serve as an arbitrator in any arbitration in which that person has any financial or personal interest in the result of the arbitration."  (See also *Mahnke v. Superior Court, supra*, 180 Cal.App.4th at pp. 579-580 [even in the absence of a statutory disclosure requirement, arbitrator must disclose whether a substantial past or present business relationship exists with a party, counsel or witness].)

Under the Arbitration Act the parties have an opportunity to disqualify the proposed neutral arbitrator based on the disclosures made.  (Code Civ. Proc., §§ 1281.91, subds. (b)(1), (d), 1281.95, subd. (b); see *Haworth v. Superior Court*, *supra,* 50 Cal.4th at p. 381.)[7]  In addition, a proposed neutral arbitrator must be disqualified if he or she fails to comply with the Code of Civil Procedure section 1281.9 disclosure requirements.  (Code Civ. Proc., § 1281.91, subd. (a).)  "If an arbitrator 'failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware,' the trial court must vacate the arbitration award.  ([Code Civ. Proc.,] § 1286.2, subd. (a)(6)(A).)"  (*Haworth*, at p. 381; accord, *Gray v. Chiu, supra*, 212 Cal.App.4th at p. 1366; *International Alliance of Theatrical Stage Employees, etc. v. Laughon* (2004) 118 Cal.App.4th 1380, 1393.)

b. *The arbitrator did not fail to disclose any conflict of interest due to his past relationship to CNA*

In her declaration in support of the petition to vacate the arbitration award, Morris stated she learned after the arbitration that the arbitrator "failed to disclose a conflict of interest that would lead a consumer to subjectively believe the arbitrator was biased because he has his own arbitration company Craigo ADR, Inc., and one of his web pages is directly electronically linked to CNA, the insurance company that furnishes [O'Neill]

---

[7]     Unlike mandatory disqualification under the Arbitration Act (Code of Civ. Proc., § 1281.9, subds. (b)(1), (d)), CSLB arbitration rules provide that the CSLB or appointed arbitration association "shall determine whether the arbitrator should be disqualified and shall inform the parties of its decision, which shall be conclusive."  (§ 7085.5, subd. (c).)

with his construction bond and a probable source of business for the arbitrator who used to work as a claims adjuster for CNA." In the petition itself, but not her sworn declaration, Morris identified the web page to which she referred as part of the social networking site LinkedIn and asserted, "On his site at LinkedIn, the arbitrator boldly displays the CNA logo next to his name. Clicking onto the logo links the person to the CNA Insurance website." She then contended Craigo had an "expectation of receiving referral business for arbitration from insurance carriers, including CNA who provides contractors' bonds" and argued such an expectation "strongly adversely impacts his ability to maintain impartiality as an arbitrator because he would necessarily favor the industry to insure repeat business from that industry."

In his opposition papers O'Neill explained Morris had access prior to selection of the arbitrator to Craigo's resume, which reflected that he had not had any connection with CNA for a period of 14 years. Craigo's one-page resume was attached as an exhibit to O'Neill's papers and disclosed Craigo had worked for CNA Insurance Companies from 1994 to 2000 as a "Negotiator/Claims Consultant." The resume also indicated Craigo had worked for American States Insurance Company in various claims capacities from 1980 through 1994 and described himself as a "claims professional." In her reply declaration Morris confirmed she had received the resume prior to Craigo's selection by the parties. O'Neill also declared, "[T]he arbitrator did not have knowledge as to the fact CNA was the company insuring my bond." Morris replied that she had mentioned CNA's status during the arbitration proceedings.

CNA was not a party, counsel or witness in this proceeding. Indeed, Morris, like all parties considering voluntary arbitration through a CSLB referral, was expressly advised in the information packet she received that Civil Code Section 2855 "may preclude a consumer from collecting the amount of an Award from the proceeds of a

16

contractor's bond."[8] Be that as it may, unquestionably the arbitrator disclosed both his past employment relationship with CNA and his extensive professional history as a claims professional with the insurance industry. No competent evidence was presented in the superior court that Craigo had any current or ongoing professional relationship with CNA or that he had engaged in discussions regarding prospective employment or service as a dispute resolution neutral with CNA or any other insurance company that required disclosure. Morris's unsworn speculation regarding the CNA icon or logo next to Craigo's listing of his employment history on a LinkedIn page is an entirely inadequate basis upon which to vacate the arbitration award.[9]

Morris also argues CSLB failed to inform her that AMCC does not make disclosures required by Code of Civil Procedure section 1281.96 for private arbitration companies administering consumer arbitrations, including detailed information about past awards. She maintains such disclosures would have demonstrated a marked pro-contractor bias, which manifested itself in the manner in which Craigo conducted the arbitration here. In her declaration in support of the petition to vacate, Morris asserted that AMCC did not publish its arbitration results but supported that claim only by reference to the information sheet AMCC had provided her in connection with the CSLB arbitration program. O'Neill objected to this portion of Morris's declaration for lack of foundation. That objection was sustained, and Morris does not challenge the evidentiary ruling on appeal. Thus, there is no factual basis for Morris's argument on this point. Moreover, although Code of Civil Procedure section 1286.2, subdivision (a)(6), requires the superior court to vacate an arbitration award if the arbitrator failed to disclose a ground for his or her disqualification, nothing in that provision or Code of Civil

---

[8]     Civil Code section 2855 provides, "An arbitration award rendered against a principal alone shall not be, be deemed to be, or be utilized as, an award against his surety."

[9]     Morris provided no evidence that Craigo had actually authorized inclusion of the icon or a hyperlink to CNA's website on his LinkedIn page. It is at least as likely the placement of those items was done automatically by the social networking site itself.

Procedure section 1281.96 itself authorizes vacation of an otherwise proper arbitration award based on a provider's nondisclosure of consumer arbitration information.

5. *Morris's Consent To Arbitration Was Informed and Voluntary*

Morris contends her consent to arbitration was not informed because it was given without knowledge she would not be entitled to discovery and without awareness of the arbitrator's potential conflict of interest or bias. As discussed above, there is no evidentiary support for the claim Morris was denied the right to conduct discovery, and her claim the arbitrator failed to make required disclosures lacks merit. Morris's challenge to the validity of her consent to arbitrate on these grounds, like her challenge to the arbitration award itself, was properly rejected by the trial court.

6. *The Arbitrator Did Not Exceed His Authority in Making an Affirmative Award to O'Neill Based on the Contract Price*

Morris's final argument is that the arbitrator exceeded his authority in using the full contract price as a basis to offset the damages proved by Morris and to affirmatively award O'Neill $1,707.11. She contends the only issue before the arbitrator was whether O'Neill was responsible for various construction defects and insists she did not agree to arbitrate the question whether she had breached the contract.

An arbitrator exceeds his or her power by deciding an issue that was not submitted to arbitration. (See *Kelly Sutherlin McLeod Architecture, Inc. v. Schneickert* (2011) 194 Cal.App.4th 519, 531; *Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 443.) However, in determining whether the arbitrators exceeded their powers within the meaning of the Code of Civil Procedure section 1286.2, subdivision (a)(4), courts must give "substantial deference to the arbitrators' own assessments of their contractual authority . . . ." (*Advanced Micro Devices, Inc. v. Intel Corp., supra*, 9 Cal.4th at p. 373.) A deferential standard is in keeping with the general rule of arbitral finality and ensures that judicial intervention in the process is minimized. (*Ibid*. ["[a] rule of judicial review under which courts would independently redetermine the scope of an arbitration agreement already interpreted by the arbitrator would invite

18

frequent and protracted judicial proceedings, contravening the parties' expectations of finality"].)

On Attachment A to her submission to voluntary arbitration form, Morris identified as among the issues she was agreeing to arbitrate, "O'Neill Construction failed to complete the project within the time period promised and abandoned the project before completion." She sought an award of $50,000, the maximum permitted in a CSLB voluntary arbitration. O'Neill in submitting his own form was deemed to have denied Morris's allegations, including that he had breached the contract and had abandoned the project. O'Neill expressly sought $30,000 in damages, essentially the full amount remaining on the contract price.

The issue whether there had been a breach of the home improvement contract was plainly before the arbitrator: That was the essence of Morris's claims, not simply O'Neill's counterclaim. Once Morris agreed to submit to the arbitrator the questions of O'Neill's contractual performance, she necessarily submitted the question of what, if any remedy was appropriate based on the liability findings. The remedy selected by the arbitrator, not only offset but also a modest affirmative award to O'Neill, bears a rational relationship to the issues properly before the arbitrator and thus was within the scope of his authority. (See *Advanced Micro Devices, Inc. v. Intel Corp., supra*, 9 Cal.4th at p. 367 ["in the absence of more specific restrictions in the arbitration agreement, the submission or the rules of arbitration, the remedy an arbitrator fashions does not exceed his or her powers if it bears a rational relationship to the underlying contract as interpreted, expressly or impliedly, by the arbitrator and to the breach of contract found, expressly or impliedly, by the arbitrator"].)

To the extent Morris contends the arbitrator undervalued the claims she proved regarding O'Neill's poor performance or unfairly calculated O'Neill's entitlement for unpaid invoices to include profit on work he did not complete, those are questions of fact and law resolved by the arbitrator and, whether or not in error, are not properly subject to

19

judicial review.  (See *Cable Connection, Inc. v. DIRECTV, Inc., supra,* 44 Cal.4th at p. 1340; *Moncharsh*, *supra,* 3 Cal.4th at p. 10.)

## DISPOSITION

The order denying the petition to vacate the arbitration award is affirmed. Because O'Neill did not participate in the appeal, no costs are awarded.


PERLUSS, P. J.


We concur:



ZELON, J.



IWASAKI, J.<sup>*</sup>

_____

*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.